# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
MULLIGAN, FEBBO, and WOLFE
Appellate Military Judges

**UNITED STATES, Appellee**
**v.**
**Sergeant ERIC D. SHORTS**
**United States Army, Appellant**

ARMY 20140721

Headquarters, Fort Stewart
John T. Rothwell, Military Judge
Colonel Francisco A. Vila, Staff Judge Advocate

For Appellant: Colonel Mary J. Bradley, JA; Major Christopher D. Coleman, JA; Captain Jennifer K. Beerman, JA (on brief).

For Appellee: Colonel Mark H. Sydenham, JA; Lieutenant Colonel A.G. Courie III, JA; Major Michael E. Korte, JA; Captain Austin L. Fenwick, JA (on brief).

24 January 2017

---------------------------------
OPINION OF THE COURT
---------------------------------

FEBBO, Judge:

In this appeal we address whether the military judge erred in failing to grant a mistrial because of a discovery violation. We find no discovery violation, because another reserve unit, with an unclear relationship in the record to appellant's unit, conducted an administrative investigation into the sexual assault four years prior to trial. That investigation was unknown to the trial counsel at the time of trial. We further find the trial counsel exercised due diligence in his discovery obligations. We do not find the military judge abused his discretion in denying the defense request for mistrial after discovery of the administrative investigation during the presentencing hearing. The military judge concluded, and we agree, the investigation was not material evidence.

A panel with enlisted representation, sitting as a general court-martial, convicted appellant, contrary to his pleas, of aggravated sexual assault upon a person who was substantially incapacitated and forcible sodomy in violation of Articles 120 and 125 Uniform Code of Military Justice, 10 U.S.C. §§ 920, 925 (2006

& Supp. IV 2011) [hereinafter UCMJ]. The convening authority approved the adjudged sentence of a dishonorable discharge, confinement for five years, forfeiture of all pay and allowances, and reduction to the grade of E-1. The convening authority credited appellant with three days of pretrial confinement credit.

This case is before the court for review pursuant to Article 66, UCMJ. Appellant raises one assignment of error which merits discussion, but no relief. We find the issues raised by appellant pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982) do not merit relief.

After a report of sexual assault involving two members of a reserve unit activated for training, two parallel investigations began. First, the Contra Costa County Sheriff's Department (CCCSD) and U.S. Army Criminal Investigative Command (CID)[1] conducted a joint criminal investigation. A few days later, a United States Army Reserve (USAR) unit began an informal administrative investigation under Army Reg. 15-6 [hereinafter AR 15-6], Boards, Commissions, and Committees: Procedures for Administrative Investigations and Boards of Officers (1 Apr. 2016).[2] The administrative investigation was to look into the "facts and circumstances surrounding" the alleged sexual assault, initially focusing on "any command policy violations or leadership issues which may have contributed to this unfortunate event."

The trial counsel could not locate the administrative investigation until after the court-martial had returned findings. In pretrial discovery requests, the defense requested production of an administrative investigation, but identified the wrong appointing authority and investigating officer. The military judge denied the

---

[1] In November 2010, since the allegations involved felony offenses of aggravated sexual assault, CID was "the sole agency within the U.S. Army responsible for the criminal investigation." *See* Army Reg. (AR) 190-2, Criminal Investigation Activities, para. 1-6 (15 May 2009). The version of AR 15-6 in effect at the time of the allegations (dated 2 October 2006) allowed for concurrent command investigations as long as they did not "hinder or interfere" with an investigation conducted by a "criminal investigative [agency]."

[2] We note that typically, parallel administrative investigations are not directed when there is an ongoing criminal sexual assault investigation. In fact, subsequent Department of Defense policy since appellant's misconduct prohibits command-directed investigations into allegations of sexual assault. *See* Dep't of Defense Instruction 5505.18, Investigation of Adult Sexual Assault in the Department of Defense (25 Jan. 2013). *See also*, Dep't of Defense Instruction 5505.03, Initiation of Investigations by Defense Criminal Investigative Organizations (DCIO), para. 4b (24 March 2011) ("[I]nvestigations initiated by the DCIOs have primacy over collateral investigations conducted by commanders.").

defense's motion for a mistrial. As explained below, we do not direct any relief because: 1) the trial counsel exercised due diligence in looking for the AR 15-6 investigation in response to the defense's discovery request; 2) after being informed of the trial counsel's efforts, the defense counsel was satisfied that trial counsel exercised due diligence and did not file a motion to compel; 3) the administrative investigation was not material; and 4) appellant was not prejudiced by its late discovery.

## BACKGROUND

In 2010, appellant was assigned to the 489th Transportation Company (Seaport Operations), 257th Battalion, a USAR unit. On the evening of 26 November 2010, during USAR training at Concord, California, appellant, Private First Class (PFC) KS, and other USAR Soldiers went to bars and night clubs and consumed alcohol. Private First Class KS consumed alcohol, became intoxicated, and spent the night in appellant's hotel room. On 27 November 2010, PFC KS reported to her unit that appellant sexually assaulted her.

### A. *The Contra Costa County Investigation*

On 28 November 2010, the CCCSD in Concord, California, began an investigation. On 29 November 2010, a CCCSD detective interviewed appellant. At the conclusion of his interview, appellant wrote a hand-written letter addressed to PFC KS in which he apologized for his conduct on the night of the assault. In the letter, which the government introduced as evidence, appellant stated:

> . . . what happened that night in my room I can never see myself doing to anyone and that is not who I am and that is not what I stand for. I had way to [sic] much to drink that night and I made a very, very, very, stupid choice in actions. . . . What happened to you no one should have to go through that. At this point I wish I could go back and erase all this shit!! I know that you might not care at this point but this is going to kill me on the inside for the rest of my life. But make me a better choice maker in the future! I have never been in trouble or done anything like this before. I can't finde [sic] the right words to say how sorry I am but I'm truely [sic] sorry about everything. I hope some day down the line however long it takes I hope you finde [sic] it in your heart to forgive me. Cause I totaley [sic] against motherfucker that do shit like this [sic] I sware [sic].

3

In the course of the CCCSD/CID investigation, PFC KS underwent a sexual assault forensic examination, and appellant provided a DNA sample. Forensic testing revealed the presence of appellant's DNA in PFC KS's anus.

### B. The Administrative Investigation

On 3 December 2010, the Commander, 641st Regional Support Group (RSG), USAR, appointed an investigating officer [hereinafter IO] to conduct an AR 15-6 investigation. It is unclear from the record why the 641st RSG conducted an investigation. The IO, Lieutenant Colonel (LTC) Thomas, obtained written statements from six soldiers, to include appellant and PFC KS. Despite his earlier statements to CCCSD, appellant denied any sexual contact with PFC KS. Private First Class KS told the investigating officer, as she would testify at trial, that she had no memory of the alleged offense. The IO did not request or receive appellant's interview with CCCSD, hand-written letter to PFC KS, or the DNA evidence results.[3]

Accordingly, based on appellant's denial of any sexual contact, PFC KS's lack of memory, and the IO not collecting or consulting any physical or forensic evidence, on 10 December 2010, the IO found the sexual assault "did not take place on 27 November 2010." On 8 January 2011, the 641st RSG Command Judge Advocate (CJA) completed the legal review for the AR 15-6 investigation.

### C. Pretrial & Trial

Based on the results of the CCCSD/CID investigation, two years later on 30 March 2013, the government preferred court-martial charges against appellant. The CCCSD/CID investigation did not include or reference the administrative investigation.

On 28 June 2013, appellant's defense counsel made a general request for discovery under Rule for Courts-Martial [hereinafter R.C.M.] 701. Other than the most general requests for "reports of investigation," and witness statements in possession of the government, the request did not include a specific request for the administrative investigation in question.

---

[3] The appointment memo addressed to the IO indicated that CCCSD and CID were conducting an investigation and provided the IO with the phone numbers for the CCCSD detective and the CID Special Agents. The record contains no evidence that the IO contacted CCCSD or CID. Rather, the IO stated, mistakenly, civilian authorities had "dropped" the matter less than two weeks after appellant allegedly committed the offense. In fact, the CCCSD/CID investigation would not be completed for months and would find probable cause to believe appellant committed the offenses.

During a pretrial Article 39(a), UCMJ, hearing, the trial counsel, an active duty judge advocate assigned to the 3d Infantry Division and Fort Stewart, Georgia, raised several discovery issues to the military judge, including a newly received defense request for "an investigation" by a "lieutenant colonel." The trial counsel stated he was unaware of any investigation.

The defense counsel stated that after their initial request they had clarified that they were seeking "an investigation" by "a Lieutenant Colonel Evans out of the 143rd ESC [Expeditionary Sustainment Command]." The defense admitted "it is not the most specific of request" but stated the defense did not have any other information. As discussed above, the administrative investigation actually conducted was by a LTC Thomas, assigned out of the 641st RSG. Lieutenant Colonel Evans is female while LTC Thomas is male.

Upon further questioning by the military judge, the defense repeated they were seeking an investigation, which they assumed was an AR 15-6 investigation, by a "LTC Evans" from the "143rd." The defense further explained the investigation may have been a "command climate" investigation or an investigation into sexual assault, but "sworn statements were taken."

At the end of the Article 39(a), UCMJ, hearing the trial counsel explained the continued steps he intended to take to find the administrative investigation and "LTC Evans." The defense did not ask the court for any relief.

After the hearing, the trial counsel contacted the judge advocate assigned to the 143rd ESC. The judge advocate told the trial counsel that he did not believe his unit conducted any investigation as described. However, he did relay to the trial counsel that there had been a "LTC Evans" who was the legal advisor of the 143rd ESC. The trial counsel contacted LTC Evans, who told the trial counsel she was familiar with the CCCSD/CID investigation and had conducted the probable cause opinion on the CID investigation. She told the trial counsel she did not believe there was any administrative investigation.

The trial counsel informed the defense of his efforts to find the administrative investigation, to include tracking down and talking to LTC Evans. The trial counsel provided the defense with the contact information of LTC Evans in case the defense wanted to contact her directly with additional questions.

The record is silent as to whether the defense counsel ever contacted LTC Evans. The defense counsel would later tell the military judge they thought the trial counsel's efforts had "settled" the matter. Although the defense counsel filed several pretrial motions—to include motions to compel discovery—the defense appeared satisfied by the trial counsel's efforts and did not file any motion or request any relief from the military judge to obtain the investigation.

5

During presentencing, the defense called several witnesses, including Specialist (SPC) Williams and Sergeant First Class (SFC) Yeartie who made sworn statements during the AR 15-6 investigation. Near the end of the defense case, some of the witnesses approached the defense counsel and informed them they believed PFC KS was not being truthful during her sentencing testimony.[4] During a comfort break the defense counsel spoke to SFC Yeartie and learned there was in fact an investigation and where it could be located.

The military judge recessed the court-martial for two days to give the trial counsel additional time to find the administrative investigation. The trial counsel subsequently obtained the administrative investigation from the 641st RSG CJA, who conducted the legal review in 2011. The defense counsel moved for a mistrial pursuant to R.C.M. 915(a).

### D. The Ruling on the Motion for Mistrial

Sergeant First Class Yeartie testified at the motion for mistrial. She stated she recalled an administrative investigation that was conducted by a male lieutenant colonel.

The military judge made findings of fact which we previously summarized. The military judge concluded as a matter of law that the government "was at a minimum negligent and certainly violated *Brady*, Article 46 and R.C.M. 701" but that "the government has established that under the circumstances of this case that its failure was harmless beyond a reasonable doubt." *See generally Brady v. Maryland*, 373 U.S. 83 (1963); *United States v. Cano*, 61 M.J. 74 (C.A.A.F. 2005).

The military judge did not explain what action or omission of the trial counsel constituted negligence and a violation of *Brady,* Article 46, UCMJ, or R.C.M. 701. The military judge made no finding that the trial counsel engaged in gamesmanship, intentionally withheld evidence favorable to the defense, or engaged in any other misconduct other than the failure to disclose the AR 15-6 investigation "was at a minimum negligent." A review of the record likewise finds no evidence of intentional withholding, willful ignorance, or gamesmanship. Once the prosecution obtained a copy of the AR 15-6 investigation, they immediately provided a copy to defense counsel and the court.

Defense counsel argued the nondisclosed information was favorable to appellant because the AR 15-6 could have been used to, among other things: (1) impeach PFC KS; (2) develop further investigative leads such as locating e-mails

---

[4] The military judge found it "is not clear to the court which part of her sentencing testimony those witnesses are referring to."

exchanged among the command; (3) refresh the memory of witnesses; and (4) interview the IO.[5] After a hearing on the defense motion for a mistrial, the military judge made oral findings of fact and law and denied the motion for a mistrial.

## LAW AND DISCUSSION

In general, to preserve a discovery issue for appeal an appellant must first raise and litigate the issue at trial. Thus, if a military judge denies a defense discovery motion (e.g. a defense motion under R.C.M. 906(b)(7)), we review the trial judge's decision for an abuse of discretion. As a general proposition, an appellant cannot request discovery and then wait to raise the issue to the appellate court without first bringing it to the attention of the military judge. "[A] trial on the merits, whether in a civil or criminal case, is the 'main event,' and not simply a 'tryout on the road' to appellate review." *Freytag v. Commissioner*, 501 U.S. 868, 895 (1991) (Scalia, J. concurring) (quoting *Wainwright v. Sykes*, 433 U.S. 72, 90 (1977)).

Stated differently, as an appellate court reviewing the record under Article 66(c), UCMJ, we review the decisions of the trial court. It is the military judge who commits error (be it preserved or unpreserved, plain or invited)—not the trial counsel. For example, suppose a defense counsel requests a particular piece of information and the trial counsel responds that the information will not be turned over. If the defense counsel does not file a motion to compel production, and the issue is not brought to the military judge's attention, we cannot say the military judge erred. More broadly, if it is not litigated, the discovery issue will not be part of the record of trial and will likely be beyond the scope of our review under Article 66(c), UCMJ.

There are exceptions to this broad proposition, and we generally see them in two forms. First, an appellant may allege his counsel at trial was deficient in his discovery practice (i.e. ineffective assistance of counsel). Second, an appellant generally asserts some type of misconduct or failure by the trial counsel. As appellant has not stated a claim of ineffective assistance and our review of the record finds no basis for an ineffective assistance of counsel claim, we focus only on the latter.

While we started with the proposition that the defense must litigate discovery issues at trial in order to preserve the issue for appeal, there are exceptions. A defense counsel may of course rely on a trial counsel's representations without

---

[5] Appellant repeats these arguments on appeal. However, appellant does not explain what leads could have been followed or developed or how that would have affected the trial. Nor does appellant explain how interviewing the IO would have produced any information favorable to the defense.

resorting to litigation, and open and equal discovery encourages resolving discovery issues without litigation.  If a trial counsel informs a defense counsel that there is no responsive information to a request, the defense counsel may assume that the trial counsel exercised due diligence before making that determination.  This principle is particularly true as R.C.M. 701 requires the prosecution "engage[] in 'good faith efforts' to obtain [requested] material."  *United States v. Williams*, 50 M.J. 436, 441 (C.A.A.F. 1999); R.C.M. 701(a)(2).  Likewise, no motion to compel is required to ensure that a trial counsel discloses information that under the rules the government is required to turn over as a matter of course.

We start with these general thoughts because this case occupies the intersection of the space between these discovery norms.  Although we address the military judge's findings below in some depth, ultimately we find the trial counsel exercised due diligence in performing his discovery obligations and therefore disagree there was a violation of *Brady*, Article 46, UCMJ, or R.C.M. 701.

Disclosure by the government generally falls into two categories:  1) information the government must turn over without a request from the defense; and 2) information the government turns over or provides access to upon a defense request.  *Compare* R.C.M. 701(a)(1), (a)(3), (a)(4), (a)(6) *with* R.C.M 701(a)(2), (a)(5).

The distinction between the two types of disclosure is significant.  If it falls into the first category, the defense need not request it—they are always entitled to the evidence.  In the latter category, the government is responding to a defense request.  Thus, whether the trial counsel exercised reasonable diligence in response to the request will depend on the specificity of the request.

Consider a comparison:  R.C.M 701(a)(6) requires the government to provide to the defense all information which "reasonably tends to "negate[] or reduce[] the degree of guilt or reduce[] punishment."  No defense request is required, disclosure is mandatory, and there is no requirement for "materiality."  R.C.M. 701(a)(2), on the other hand, requires the government to provide the defense access to anything that is "material to the preparation of the defense."  That is, R.C.M. 701(a)(2) incorporates a constitutional "materiality" requirement similar to *Brady*.  However, neither of these rules subsumes the other.  R.C.M. 701(a)(6) is limited to information "*known* to the trial counsel."  R.C.M. 701(a)(6) requires trial counsel to turn over what he or she has but does not create an obligation to get information of which the trial counsel is unaware. *But see United States v. Jackson*, 59 M.J. 330, 334 (C.A.A.F. 2004) (outlining the scope of a prosecutor's duty as to matters not within his or her personal knowledge).  R.C.M. 701(a)(2) on the other hand is triggered by a request by the defense.  Thus, the rule balances two competing interests:  The rules require broad discovery over information known to the trial

counsel, but requires a defense request for information not known by the trial counsel.

In this case, the military judge held the government violated both *Brady* and R.C.M. 701. He held the trial counsel was required to find and turn over the administrative investigation both independently of the defense request, and in accordance with the defense request. Accordingly, we will address them separately.

### A. *Brady v. Maryland*

The Due Process Clause of the Fifth Amendment requires the prosecution to disclose evidence that is material and favorable to the defense. *Brady*, 373 U.S. at 87. This requirement exists whether there is a general request or no request at all. *United States v. Agurs*, 427 U.S. 97, 107 (1976). Under due process discovery and disclosure requirements, the Supreme Court has "rejected any . . . distinction between impeachment evidence and exculpatory evidence." *United States v. Eshalomi*, 23 M.J. 12, 23 (C.M.A. 1986) (quoting *United States v. Bagley*, 473 U.S. 667, 676 (1985)). "[W]hen an appellant has demonstrated error with respect to nondisclosure, the appellant will be entitled to relief only if there is a reasonable probability that there would have been a different result at trial had the evidence been disclosed." *United States v. Santos*, 59 M.J. 317, 321 (C.A.A.F. 2004).

The military judge found that the government violated *Brady*, but that this error was harmless. This analysis was incorrect as a matter of law. Every *Brady* violation is per se not harmless. As our superior court explained in *United States v. Behenna*, 71 M.J. 228 (C.A.A.F. 2012):

> Pursuant to Brady, the Government violates an accused's "right to due process if it withholds evidence that is favorable to the defense and material to the defendant's guilt or punishment." *Smith v. Cain*, [565 U.S. 73, 75] (2012). Evidence is favorable if it is exculpatory, substantive evidence or evidence capable of impeaching the government's case. *United States v. Orena*, 145 F.3d 551, 557 (2d Cir. 1998) (citing *United States v. Bagley*, 473 U.S. 667, 676 (1985)). Evidence is material when "there is a reasonable probability that, had the evidence been disclosed, the result of the proceeding would have been different." *Smith*, [565 U.S. at 75]. To be material, the evidence must have made the "likelihood of a different result . . . great enough to 'undermine[] confidence in the outcome of the trial.'" *Id*. (alteration in original) (citation omitted). Once a *Brady* violation is established, courts

9

> need not test for harmlessness. *Kyles v. Whitley*, 514 U.S. 419, 435-36 (1995).

*Behenna*, 71 M.J. at 237-38 (internal and parallel citation omitted).

Here, the military judge found that the government violated *Brady*. However, because the administrative investigation was cumulative and "disclosure would not have affected the outcome of trial" (i.e. not material) the error was harmless beyond a reasonable doubt. But, if the evidence is not material—*no Brady violation can occur*. If the evidence is irrelevant, cumulative with other evidence, or otherwise would not have caused "the result of the proceeding to be different" the government does not violate *Brady*. Although the term is often used loosely by practitioners, all "*Brady*" evidence is by definition material.

Setting aside the materiality of the administrative investigation, we also disagree that the government was required to find and turn over the administrative investigation as a matter of constitutional obligations under the facts of this case. We limit our discussion here to that which is constitutionally required, leaving for later an analysis under the broader discovery provisions contained in the Rules for Courts-Martial.[6]

The *Brady* rule is not an evidentiary rule that grants broad discovery powers to a defendant, because there "is no general constitutional right to discovery in a criminal case." *Weatherford v. Bursey*, 429 U.S. 545, 559 (1977); *Downs v. Hoyt*, 232 F.3d 1031, 1037 (9th Cir. 2000)("*Brady* does not require a prosecutor to turn over files reflecting leads and ongoing investigations where no exonerating or impeaching evidence has turned up.").

The question here, as we see it, is *where*, and *how hard*, must the trial counsel look for evidence in order to avoid violating *Brady*? Again, practitioners often use the term "*Brady* evidence" loosely. We often see in records, for example,

---

[6] *Brady* sets the constitutional floor of government discovery requirements. The Rules for Courts-Martial provide for much broader government disclosure. *United States v. Santos*, 59 M.J. 317, 321 (C.A.A.F. 2004); *United States v. Kinney*, 56 M.J. 156 (C.A.A.F. 2001) ("One of the hallmarks of the military justice system is that it provides an accused with a broader right of discovery than required by the Constitution.") (internal citations omitted). Good military practice often incorporates "open-file" discovery. Nothing in this discussion about constitutional minimums should be interpreted as abrogating requirements imposed by the rules or suggesting discovery should be limited to only that which is required. For example, it is beyond dispute that the President's implementation of Article 46, UCMJ, through R.C.M. 701, provides for broad discovery in the pretrial phase.

practitioners referring to subpoenaing "*Brady* evidence" from civilians where the evidence is not in the actual or constructive control of the prosecution.

We answer the question as follows: to comply with *Brady*, a trial counsel must search his or her own file, and the files of related criminal *and administrative investigations*.  However, consistent with our superior court's interpretation of the issue, we require a trial counsel only exercise due diligence.  *See United States v. Simmons*, 38 M.J 276 (C.A.A.F. 1993); *United States v. Mahoney*, 58 M.J. 346 (C.A.A.F. 2003).

### B.  Where to Look?

So, where must a trial counsel look for *Brady* evidence?  Clearly, a trial counsel must search his or her own file.  However, "[d]iscovery is not limited to matters within the scope of the trial counsel's personal knowledge." *Jackson*, 59 M.J. at  334.  The trial counsel must also "reveal information that it had in its possession or knowledge[7] —whether actual or *constructive*."  *United States v. Stellato,* 74 M.J. 473, 487 (quoting *United States v. Beers*, 189 F.3d 1297, 1304 (10th Cir. 1999) (emphasis added).  A 'box of evidence,' for example, offered to the prosecution by a government witness for inspection, cataloging, and voluntary seizure is under the constructive control of the prosecution.  *Stellato*, 74 M.J. at 487.

However, for *Brady* purposes, information under the control of the "prosecution" is not the same as information under the control of the entire government.  Interpreting *Brady*, the U.S. Supreme Court held an "individual prosecutor has a duty to learn of any favorable evidence known to the others acting on the government's behalf *in the case*, including the police."  *Kyles*, 514 U.S. at 437 (emphasis added).  *See also United States v. Mahoney*, 58 M.J. 346, 348 (C.A.A.F. 2003) ("The individual prosecutor has a duty to learn of any favorable evidence known to others acting on the Government's behalf.") (quoting *Stricker v. Greene*, 527 U.S. 263, 281 (1999)).  In general, the courts interpreting this rule require a search of a trial counsel's own files, the investigative files of federal law enforcement, and—if the facts demonstrate they are in the constructive control of the trial counsel—state law enforcement and other agencies.  *Stellato*, 74 M.J. at 486.

"It is well settled that there is no 'affirmative duty upon the government to take action to discover information which it does not possess.'"  *United States v. Tierney*, 947 F.2d 854, 864 (8th Cir. 1991) (quoting *United States v. Beaver*, 524

---

[7] Although not raised by the facts of this case, we emphasize this analysis is not limited to statements that are reduced to a writing and includes information the trial counsel learns through oral communications with witnesses.  *See Stellato*, 74 M.J. at 487.

F.2d 963, 966 (5th Cir. 1975)); *United States v. Kraemer*, 810 F.2d 173, 178 (8th Cir. 1987) (explaining that the prosecution is not required "to search out exculpatory evidence for the defendant"). It is also constitutionally well-established that the burden is on the prosecutor to produce *exculpatory* materials within its control; the burden is not on the defendant to first point out that such materials exist. *See Kyles*, 514 U.S. at 437.

Turning to the question at hand, we find that a trial counsel's duties under *Brady* extend to military administrative investigations that are related to the case. The "parameters of the review that must be undertaken outside of the prosecutor's own files" will depend on the specific relationship of the government entity to the prosecution. *Williams*, 50 M.J at 441. "A prosecutor may have a duty to search files maintained by other 'governmental agencies closely aligned with the prosecution' when there is 'some reasonable prospect or notice of finding exculpatory evidence.'" *United States v. Padilla*, 2011 U.S. Dist. LEXIS 31091, *7 (quoting *United States v. Brooks*, 966 F.2d 1500, 1503, 296 U.S. App. D.C. 219 (D.C. Cir. 1992)). However, based on the facts in this case, we determine the trial counsel did not have actual or constructive knowledge or control of the administrative investigation at issue here, or "some reasonable prospect or notice of finding exculpatory evidence." Put differently, there was no evidence introduced that the trial counsel knew, or through the exercise of due diligence, should have known the investigation existed. We reach this conclusion for several reasons.

First, the record contains no evidence that supports an inference that the trial counsel had actual knowledge of, or control over, an administrative investigation completed by the 641st RSG. The administrative investigation was completed by a reserve component unit almost four years before trial. As the military judge specifically noted, the record of trial does not explain the relationship between appellant's unit and the 641st RSG, or even why the 641st conducted an investigation. By regulation, at the time of the allegations, CID was the Army "sole" agency responsible for felony criminal investigations. The CCCSD/CID investigation does not mention the administrative investigation.

Additionally, we have no evidence in the record that would explain why the trial counsel *should have* known that the 641st RSG conducted an administrative investigation in 2010. The defense counsel asked the trial counsel to find an administrative investigation, conducted by the 143rd ESC and a LTC Evans. However, such an investigation did not exist. The trial counsel tracked down the 143rd ESC, found LTC Evans, and reported the results of that contact to appellant's defense counsel.

Moreover, the defense counsel did not provide to the trial counsel any explanation *why* they believed there had been an administrative investigation, at least on the record. For example, the defense did not explain they knew there was

an investigation because appellant had made a sworn statement to a *male* lieutenant colonel investigating officer. Had they provided additional information to the trial counsel, the trial counsel may have been able to find the investigation. Nothing in the record imputes knowledge or constructive knowledge of the investigation to the trial counsel or suggests the trial counsel did not exercise due diligence. Although the AR 15-6 IO interviewed PFC KS, the military judge found the trial counsel was unaware of the investigation, which included the IO's interview of PFC KS. Only under a strict liability test (i.e., there was an investigation ergo the trial counsel erred) could we find fault with the trial counsel.

Alternatively, we also cannot find a *Brady* violation based on the defense counsel's access to information necessary to identify the allegedly exculpatory evidence in the case. "Certainly, *Brady* does not require the government to conduct discovery on behalf of the defendant." *United States v. Baker*, 1 F.3d 596, 598 (7th Cir. 1993); *see also United States v. Flores*, 540 F.2d 432, 437 (9th Cir. 1976) (noting that government has no duty to fish through public records equally accessible to defense to collate information). As our superior court has stated:

> The purpose of *Brady* is to assure that the accused will not be denied access to exculpatory evidence known to the government but unknown to him. Irrespective of whether the statement here was exculpatory evidence under *Brady*, a question we do not reach, there is no *Brady* violation when the accused or his counsel knows before trial about the allegedly exculpatory information and makes no effort to obtain its production.

*United States v. Lucas*, 5 M.J. 167 (C.M.A. 1978). In other words, when the trial counsel ensures access of government records to the defense, the trial counsel has complied with *Brady*. *See* UCMJ art. 46. "The State has no obligation to point the defense toward potentially exculpatory evidence when that evidence is either in the possession of the defendant or can be discovered by exercising due diligence." *Rector v. Johnson*, 120 F.3d 551, 558-59 (5th Cir. 1997); *Pippin v. Dretke*, 434 F.3d 782 (5th Cir. 2005); *United States v. Payne*, 63 F.3d 1200, 1208 (2nd Cir. 1995); *United States v. Bermudez*, 526 F.2d 89, 100 (2d Cir. 1975).

### C. Article 46, Uniform Code of Military Justice

We briefly address the military judge's finding that the government violated Article 46. "Article 46, UCMJ, provides the trial counsel, defense counsel, and the court-martial with the "equal opportunity to obtain witnesses and other evidence in accordance with" the rules prescribed by the President. UCMJ art. 46, 10 U.S.C. § 846 (2012); *Stellato*, 74 M.J. at 481. Article 46, UCMJ, contains a grant of authority to the President to prescribe rules of discovery that are "broader than in federal

civilian criminal proceedings, [and] is designed to eliminate pretrial gamesmanship, reduce the amount of pretrial motions practice, and reduce the potential for surprise and delay at trial." *United States v. Jackson*, 59 M.J. 330, 333 (C.A.A.F. 2004) (internal citations and quotation marks omitted). The President has sought to provide equal access to evidence *at trial* by prescribing rules that provide for discovery *pretrial*.

One reading of the military judge's ruling is that he found a violation of Article 46 *separate* from his finding that the government violated its discovery obligations under R.C.M. 701. Alternatively, the military judge's ruling could be interpreted as finding that *because* he found the trial counsel violated R.C.M. 701, and R.C.M. 701 is a rule promulgated by the President pursuant to Article 46, the trial counsel also violated Article 46, UCMJ. We believe the latter interpretation is correct as we can find no right to discovery in Article 46, UMCJ, that has not been incorporated into R.C.M. 701. Or, put differently, one cannot violate the disclosure provisions of Article 46, UCMJ, without also violating R.C.M. 701. Accordingly, we will focus our analysis on the military judge's ruling that the trial counsel violated R.C.M. 701.

### D. Rule for Courts-Martial 701

Disclosures in the military are governed by R.C.M. 701, "which sets forth specific requirements with respect to 'evidence favorable to the defense' . . ." *United States v. Williams*, 50 M.J. 436, 440 (C.A.A.F. 1999). In making a ruling that the trial counsel had violated R.C.M. 701, the only provision referred to by the trial judge was R.C.M. 701(a)(2), which provides that "[a]fter service of charges, upon request of the defense, the Government shall permit the defense to inspect . . . books, papers, documents . . . which are within the control of military authorities, and which are material to the preparation of the defense." As an initial matter, as discussed above, to the extent that the military judge found the administrative investigation not to be "material" when he found its absence to be harmless beyond a reasonable doubt, such a finding would result in no violation of R.C.M. 701(a)(2) (requiring materiality).

However, again setting aside whether the administrative investigation was material, it is not clear how the trial counsel did not comply with the rule. R.C.M 701(a)(2) addresses information in the control of military authorities, *when requested by the defense*. Here, the defense requested an administrative investigation conducted by a LTC Evans of the 143rd ESC. It is undisputed that no such investigation existed. A request for information under R.C.M. 701(a)(2) must be specific enough that the trial counsel, through the exercise of due diligence, knows where to look (or where to provide the defense access). We cannot find the trial counsel erred under R.C.M. 701(a)(2) when he: 1) failed to produce something that was not requested; 2) had no knowledge whatsoever of its existence; and 3)

exercised due diligence in responding to the defense request he did receive. A trial counsel does not violate R.C.M. 701(a)(2) when he looks for information in the exact place the defense requested. In fact, in a colloquy with the military judge, the defense counsel described his belief that the trial counsel's efforts in locating the administrative investigation had "settled" the matter.

Moreover, it appears by not filing a motion to compel, appellant was satisfied at the time the trial counsel exercised reasonable diligence and forfeited any complaint he might have had with the trial counsel's efforts to find the administrative investigation.[8] *See generally United States v. Avery*, 52 M.J. 496, 498 (C.A.A.F. 2000) (an accused may affirmatively waive the government's nondisclosure in discovery). R.C.M. 906(b)(7) specifically provides for the defense to file a motion to compel discovery, and R.C.M. 701(g)(3) specifically provides for the military judge to grant relief. If the defense finds the trial counsel's efforts in meeting a defense request for evidence fall short, the remedy is to raise the matter to the military judge so that it can be addressed. *See Stellato*, 74 M.J. at 482, n.8 (noting where the military judge issued orders "on at least six occasions compelling discovery of witnesses or documents" before dismissing the case). Absent an incorrect or misleading response, intentional ignorance of evidence favorable to the defense, or gamesmanship by a trial counsel, if a defense counsel is satisfied by the trial counsel's due diligence in response to a discovery request, they cannot later complain of the trial counsel's efforts because it turns out their satisfaction was misplaced. At least in circumstances where the defense has identified the evidence requested, it is the defense counsel who is best positioned to know if the trial counsel's response to a discovery request satisfies the impetus of the request.

Consider that appellant himself made a statement as part of the administrative investigation. That statement contradicted both his statement to CCCSD, the DNA evidence, and the defense theory of the case at trial. A pretrial motion to compel, if successful, would have lead the trial counsel to find appellant's statement; possibly resulting in additional charges and at least potentially complicating the defense strategy.

In *United States v. Roberts*, 59 M.J. 323 (C.A.A.F. 2004), our superior court addressed directly what happens when the trial counsel does not produce evidence requested by the defense. Appellant cites *Roberts* for the proposition that the government's failure to produce defense requested material evidence must be tested

---

[8] This analysis does not apply to information that the government is required to disclose *without* a defense request or circumstances where the defense counsel justifiably relied on the accuracy of the trial counsel's representations.

to determine whether it is harmless beyond a reasonable doubt.[9]  However, *Roberts* involves a case where: 1) the defense requested specific information; 2) the information requested was material; 3) the government possessed the information but told the defense that they refused to turn it over; 4) the defense filed a motion to compel; and 5) the military judge denied the defense motion.  The Court of Appeals for the Armed Forces (CAAF) found the military judge erred.  CAAF tested for constitutional error, as there was a constitutional violation when the government refused to turn over material and favorable evidence in possession of the government.  Here, by contrast, there was no pretrial litigation involving discovery of the administrative investigation.[10]  We do not interpret *Roberts* as standing for the proposition that we test for constitutional error regardless of the trial counsel's reasonable efforts, regardless of whether the defense preserved the issue by filing a motion to compel, and regardless of the specificity or materiality of the information in question.  We do not test for constitutional error for discovery violations unless the violation was constitutional.

Accordingly, we do not find a violation of R.C.M. 701.[11]  Although we do not find a discovery violation, we nonetheless address if the military judge abused his discretion in denying a mistrial and address prejudice as it relates to the AR 15-6 investigation.

### E.  Materiality & Prejudice

Mistrials are to be used only "under urgent circumstances, and for plain and obvious reasons."  *United States v. Trigueros*, 69 M.J. 604, 608 (Army Ct. Crim. App. 2010) (internal citations omitted).  R.C.M. 915(a) vests a military judge with the discretion to declare a mistrial when "manifestly necessary in the interest of justice because of circumstances arising during the proceedings which cast substantial doubt upon the fairness of the proceedings."  Accordingly, appellate courts "will not reverse a military judge's determination on a mistrial absent clear evidence of an abuse of discretion."  *United States v. Ashby*, 68 M.J. 108, 122

---

[9] We note that by applying a "harmless beyond a reasonable doubt" standard, the *Roberts* court seemed to apply a stricter standard than the U.S. Supreme Court has held applicable for *Brady* violations.

[10] Under appellant's view of *Roberts*, every non-disclosure of information requested by the defense, regardless of materiality, would be tested for constitutional error on appeal.  This view discourages resolving matters early (and at the trial level).

[11] We note a specific article of the UCMJ provides an avenue of relief when new evidence is discovered after trial.  *See* UCMJ art. 73.  Had the administrative investigation been material or exculpatory, the defense would have an avenue for relief even in circumstances where discovery did not reveal the item prior to trial.

(C.A.A.F. 2009) (internal citations omitted).  "The abuse of discretion standard is a strict one, calling for more than a mere difference of opinion."  *Stellato*, 74 M.J. at 480.  Military judges abuse their discretion when their "findings of fact are clearly erroneous, the court's decision is influenced by an erroneous view of the law, or the military judge's decision on the issue at hand is outside the range of choices reasonably arising from the applicable facts and the law."  *Id.* (quoting *United States v. Miller,* 66 M.J. 306, 307 (C.A.A.F. 2008)).

Appellant asserts the military judge erred by not fully addressing the ways the defense counsel could have used the AR 15-6 investigation.  Namely, had the defense known of the existence of the AR 15-6 investigation, they could have developed additional investigative leads to include obtaining e-mails exchanged by the command, refreshed the memories of witnesses, and had an opportunity to interview the IO.

At the hearing on the motion for mistrial, the defense counsel argued these points to the military judge.  The military judge was not required to explicitly address every point argued by the defense and government counsel.  Neither at trial nor on appeal did the defense elaborate how they could have used the administrative investigation.  Thus, for example, while the defense claims they could have used the administrative investigation to interview the IO, the defense makes no assertion that the IO would have disclosed anything useful.  Similarly, we have no description on appeal as to what leads might have been followed and what information they would have revealed.

The administrative investigation was not material to the defense.  Material evidence must have made the "likelihood of a different result . . . great enough to 'undermine[ ] confidence in the outcome of the trial.'"  *Behenna*, 71 M.J. at 238 (quoting *Smith v. Cain*, 565 U.S. at 75 (alteration in original)).  Even if the administrative investigation was disclosed prior to trial, the investigation and IO's testimony would have had little probative value.  The IO's poorly informed conclusion that there was no sexual assault was inadmissible.  The IO investigated the allegations for approximately seven days and obtained six statements.  Without speaking to a medical professional, the IO concluded that PFC KS had a drinking problem and "display[ed] inappropriate behavior toward male soldiers," and the command should refer her to a program "to evaluate her social, emotional, and family" issues.  Although the appointment memorandum included the contact information for CCCSD and CID, there is no indication that he contacted CCCSD and CID before concluding that the case was "dropped" by civilian authorities.  At the time the IO completed the investigation, the CCCSD had not completed their investigation.  The administrative investigation did not include appellant's statement to CCCSD, his hand-written letter to PFC KS, or the DNA test results.

The administrative investigation did not contain exculpatory evidence and had limited impeachment value. There was little difference between the information in the AR 15-6 investigation and that same information as it was presented at trial.[12] *See Behenna*, 71 M.J. at 238 (citing *United States v. Gonzalez*, 62 M.J. 303, 307 (C.A.A.F. 2006)) ("The overlapping nature of the evidence [presented at trial] undercuts an argument that the failure to disclose pursuant to *Brady* was prejudicial."). The military judge, reviewing the totality of the record, found that the "bulk of the evidence presented by the government of what occurred inside the [appellant's] hotel room was provided from evidence and sources other than PFC [KS]." The appellant provided an audio taped statement to a CCCSD detective and provided DNA evidence. The government admitted appellant's "apology letter" to PFC KS. Private First Class KS provided little testimony on what occurred in the hotel room. Her testimony at trial was primarily from the morning after, when she was awakened by appellant. Similarly, in the administrative investigation, PFC KS stated she did not remember anything that happened after going to the bar or club. The AR 15-6 investigation contained statements from several witnesses who testified at trial. Among other findings, the military judge also found PFC KS was impeached with prior inconsistent statements that she made during two Article 32, UCMJ, investigations.

The administrative investigation did not materially contradict evidence presented at trial. *See Agurs*, 427 U.S. at 114 (no *Brady* violation when the alleged *Brady* material did not contradict any evidence already admitted and was similar to other evidence in the record). Even when considering all of the government's interrelated discovery obligations, the military judge found that the government's failure to locate and provide the defense the AR 15-6 investigation would not have affected the outcome of the trial and was harmless beyond a reasonable doubt.

Because we agree with the military judge that the government's failure to disclose the AR 15-6 investigation before trial pursuant to R.C.M. 701 was harmless beyond a reasonable doubt, we also conclude the military judge did not abuse his discretion in denying appellant's motion for a mistrial under R.C.M. 915.

---

[12] The one exception was the statement by appellant. In his sworn statement to the IO, appellant denied any sexual contact with the victim and gave a detailed version of events where he depicted himself as innocent. This assertion completely contradicted the statement he had just made as part of the CCCSD/CID investigation. However, the absence of this statement in no way prejudiced appellant at trial.

**CONCLUSION**

The findings of guilty and the sentence are AFFIRMED.

Senior Judge MULLIGAN and Judge WOLFE concur.

FOR THE COURT:

JOHN P. TAITT
Acting Clerk of Court