# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
ALDYKIEWICZ, EWING,[1] and WALKER
Appellate Military Judges

**UNITED STATES, Appellee**
**v.**
**Captain LUIS E. RAMIREZ**
**United States Army, Appellant**

ARMY 20190367

Headquarters, 1st Cavalry Division
G. Bret Batdorff, Military Judge
Colonel Emily C. Schiffer, Staff Judge Advocate

For Appellant: Major Steven J. Dray, JA; William E. Cassara, Esquire (on brief); Captain Roman W. Griffith, JA; William E. Cassara, Esquire (on reply brief).

For Appellee: Colonel Steven P. Haight, JA; Lieutenant Colonel Wayne H. Williams, JA; Major Craig J. Schapira, JA; Major Joshua B. Banister, JA (on brief).

30 November 2020

---------------------------------
SUMMARY DISPOSITION
---------------------------------

*This opinion is issued as an unpublished opinion and, as such, does not serve as precedent.*

EWING, Judge:

During a deployment to Poland, appellant, a battalion chaplain, victimized two lower ranking members of his unit, and violated the Army's fraternization policy. A military judge sitting as a general court-martial convicted appellant, contrary to his pleas, of one specification of violating a lawful general regulation, four specifications of wrongful sexual contact, and two specifications of sexual assault, in violation of Articles 92 and 120, Uniform Code of Military Justice, 10

---

[1] Judge Ewing decided this case while on active duty.

RAMIREZ—ARMY 20190367

U.S.C. §§ 892, 920 (2012 & Supp. V 2018) [UCMJ]. The military judge sentenced appellant to a dismissal and confinement for 29 months.[2]

Appellant's case is before this Court for review pursuant to Article 66, UCMJ. Appellant contends that: (1) the government's evidence was legally and factually insufficient to support his convictions; (2) his sentence was inappropriately severe; and (3) several of the specifications of which he was convicted represented an unreasonable multiplication of charges ("UMC") for findings. We hold that the government's evidence was both legally and factually sufficient, and appellant's sentence was not inappropriately severe. While appellant's UMC claim warrants

---

[2] The convening authority took no action on appellant's adjudged sentence. In light of *United States v. Coffman*, 79 M.J. 820 (Army Ct. Crim. App. 2020), we find the convening authority's failure to act on appellant's sentence as required by the applicable version of Article 60, UCMJ, while error, was not jurisdictional in nature. We also find the error did not materially prejudice appellant's substantial rights. In testing for prejudice, we considered whether appellant submitted clemency matters, the convening authority's clemency authority, and the advice the convening authority received related to his clemency powers. *See Coffman*, 79 M.J. at 824.

Appellant submitted clemency matters pursuant to Rule for Courts-Martial (R.C.M.) 1106, in which counsel requested the convening authority provide any relief permissible under the law. Appellant also requested deferment and waiver of automatic forfeitures for the benefit of his dependents. The convening authority denied appellant's request for deferment of automatic forfeitures, but granted the waiver of automatic forfeitures for a period of six months. The version of Article 60 applicable to appellant's convictions prohibited the convening authority from disapproving, commuting, or suspending appellant's adjudged sentence to confinement, as it exceeded six months, and a dismissal. UCMJ art. 60(c)(4)(A) (2018). The Staff Judge Advocate correctly advised the convening authority regarding his clemency powers and noted appellant submitted clemency matters for the convening authority's action. The maximum sentence to confinement for appellant's conviction, after the military judge merged several specifications for sentencing, was thirty-nine years. Considering appellant was only sentenced to a small fraction of the maximum sentence, the convening authority received proper legal advice related to his ability to provide clemency in appellant's case, the convening authority's inability to disapprove confinement or a dismissal, and the convening authority was presented with appellant's clemency maters, we find the convening authority's non-compliance with the applicable version of Article 60, was harmless. *See Coffman*, 79 M.J. at 824.

discussion, it too is meritless.[3] We therefore affirm appellant's convictions and sentence.

## BACKGROUND

In June 2018, appellant's battalion was living in tents and repurposed railroad cars outside the town of Karliki, Poland, in support of Operation Atlantic Resolve. The soldiers were authorized to visit local establishments when off duty, where they could eat, drink, and socialize.

First Lieutenant (1LT) EE served on the battalion staff with appellant. One evening after work, 1LT EE and appellant went to a local restaurant for drinks. First Lieutenant EE viewed this as a friendly outing with a colleague, and was talking with appellant about her difficulty in "going back to church." After the two drank for a period of time on the restaurant's patio, appellant kissed 1LT EE by "slobber[ing] all over" her mouth. First Lieutenant EE told appellant to stop. First Lieutenant EE again rejected appellant's attempts to kiss her during a cab ride back to base. After arriving at the base front gate, the two walked five minutes to 1LT EE's quarters in a dimly lit area where she was staying by herself in one of the repurposed railroad cars. The door to 1LT EE's quarters did not lock, and she had to "push on it so that it would stick shut."

First Lieutenant EE went in, closed the door, and was in the process of changing clothes when she was startled to realize appellant had come in behind her. First Lieutenant EE quickly pulled on a pair of sweatpants, and appellant approached 1LT EE, put his hand down her pants, and penetrated her vagina with his finger. Appellant realized that 1LT EE was wearing a tampon, and commented that that was why she "didn't want to." First Lieutenant EE responded, "No." First Lieutenant EE then "tried to get some space" between herself and appellant, and went to the other side of the room. Appellant followed, and pulled up 1LT EE's shirt, unhooked her bra, and touched her breast with his hands. Appellant then penetrated 1LT EE's vagina a second time with his finger, now on the opposite side of the room. Appellant took off his pants, took 1LT EE's hand, and placed it on his penis. After 1LT EE pushed appellant away, he laid down on the bed with his pants off and asked 1LT EE to join him. When she refused, appellant got up and walked towards 1LT EE again. First Lieutenant EE shoved appellant more forcefully this time, and appellant gathered his things and left. First Lieutenant EE secured her door to a nearby table with 550 cord, and went to bed. First Lieutenant EE testified that she told appellant "no" at the restaurant, in the cab, and multiple times in her quarters.

---

[3] We have also given full and fair consideration of the matters personally submitted by appellant pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982), and find them to be without merit.

Specialist (SPC) HS had sought appellant's spiritual counsel about a sensitive personal matter: namely, "coming out" to her family about her homosexuality. One evening, next to the MWR tent, appellant asked SPC HS to continue an earlier discussion the two had started on the topic. Specialist HS agreed, and the two moved to the nearby woodline where there was a small seating area. After brief discussion of SPC HS's personal issue, the two hugged, and SPC HS could feel appellant "rubbing his penis on [her] leg" through his clothing. This made SPC HS "very uncomfortable," and she began "shaking." The two sat down, and appellant asked SPC HS if he could pray for her. Appellant took SPC HS's hands, said a prayer, and then put one of his hands on SPC HS's leg while he continued to hold her wrist with his other hand. When SPC HS attempted to pull her hand away, appellant pulled it up his shorts to touch his penis. Specialist HS protested that she was "gay as fuck" and did not "know what [she was] doing." Appellant then placed his hand on SPC HS's crotch and began rubbing her genitals, over her clothing. Appellant asked SPC HS to kiss him and to have sex with him in a nearby vacant tent; SPC HS refused. Appellant stopped when SPC HS said she saw others approaching. After the incident, SPC HS did not immediately return to her tent because her bed was near the door, and she was afraid appellant would come in. Appellant told SPC HS not to "tell anyone," because he had a "family back at home and he didn't want to lose them," and that SPC HS could harm her career by disclosing the incident.[4] The incident ultimately came to light during the investigation into appellant's actions with 1LT EE.

The government charged appellant with six specifications of violations of Article 120, UCMJ (2012), as follows:

> 1. Abusive sexual contact (touching SPC HS's inner thigh and genitalia);
>
> 2. Abusive sexual contact (causing SPC HS to touch appellant's penis);
>
> 3. Sexual assault (penetration of 1LT EE's vagina with appellant's finger);
>
> 4. Abusive sexual contact (touching 1LT EE's breast);
>
> 5. Sexual assault (penetration of 1LT EE's vagina with appellant's finger); and

---

[4] Specialist HS was among the first cohort of the first 11-Bravo-qualified female infantry soldiers in the Army.

6. Abusive sexual contact (causing 1LT EE to touch appellant's penis).

Appellant contended that Specifications 1 and 2, 3 and 5, and 4 and 6, respectively, represented an unreasonable multiplication of charges for both findings and sentencing. The government opposed appellant's UMC for findings motion, but ultimately conceded that the military judge should merge the same three pairs of specifications for sentencing.

The military judge addressed appellant's motion following his announcement of findings. The court held that none of the specifications represented an unreasonable multiplication of charges for findings purposes, because they were "each aimed at distinct and different criminal acts." For sentencing purposes, the military judge merged the two specifications related to SPC HS into one specification, and the four specifications related to 1LT EE into one specification, for a total of two specifications for sentencing.

In this Court, appellant contends that the military judge erred by failing to find Specifications 1 and 2, 3 and 5, and 4 and 6 represented an unreasonable multiplication of charges for findings.

## LAW AND DISCUSSION

Where an appellant preserves the issue by objecting at trial, we review a military judge's decision to deny relief for unreasonable multiplication of charges for an abuse of discretion. *United States v. Campbell*, 71 M.J. 19, 22 (C.A.A.F. 2012) (citing *United States v. Pauling*, 60 M.J. 91, 95 (C.A.A.F. 2004)). "Military judges abuse their discretion when their findings of fact are clearly erroneous, the court's decision is influenced by an erroneous view of the law, or the military judge's decision on the issue at hand is outside the range of choices reasonably arising from the applicable facts and the law." *United States v. Shorts*, 76 M.J. 523, 536 (Army Ct. Crim. App. 2017) (internal quotation marks and citation omitted).

"What is substantially one transaction should not be made the basis for an unreasonable multiplication of charges against one person." Rule for Courts-Martial 307(c)(4). The prohibition against unreasonable multiplication of charges "'addresses those features of military law that increase the potential for overreaching in the exercise of prosecutorial discretion.'" *Campbell*, 71 M.J. at 23 (quoting *United States v. Quiroz*, 55 M.J. 334, 337 (C.A.A.F. 2001)).

In analyzing UMC claims, we consider the following factors:

> (1) Did the accused object at trial that there was an unreasonable multiplication of charges and/or

specifications? (2) Is each charge and specification aimed at distinctly separate criminal acts? (3) Does the number of charges and specifications misrepresent or exaggerate the appellant's criminality? (4) Does the number of charges and specifications unfairly increase the appellant's punitive exposure? (5) Is there any evidence of prosecutorial overreaching or abuse in the drafting of the charges?

*United States v. Forrester*, 76 M.J. 479, 485 n. 4 (C.A.A.F. 2017) (quoting *Quiroz*, 55 M.J. at 338). We weigh these factors together, and while none is a prerequisite, "one or more . . . may be sufficiently compelling" to find charges unreasonably multiplied, or not. *Campbell*, 71 M.J. at 23. The CAAF has explained that the *Quiroz* UMC analysis can apply differently as to findings and sentencing. *See id.* ("For example, the charging scheme may not implicate the *Quiroz* factors in the same way that the sentencing exposure does.").

In the instant case, the military judge's denial of appellant's UMC motion as to findings was a reasoned use of his discretion. While appellant objected at trial, and thus *Quiroz's* first factor weighs in his favor, the remainder of the factors cut against him. Each challenged specification addressed a separate criminal act. Appellant's two penetrations of 1LT EE's vagina took place on opposite sides of the room, and after 1LT EE broke contact with appellant. Likewise, appellant's touching of 1LT EE's breast, and his causing 1LT EE to touch his penis, were separate acts. Similarly, appellant's touching of SPC HS's genitals, and his actions in placing her hand on his penis, amounted to separate criminal acts, and were different in kind. At each step along the way, as to both 1LT EE and SPC HS, appellant could have disengaged at any time. Because he did not, it was neither prosecutorial overreach nor an exaggeration of his criminality to charge him with the six separate specifications at issue here. *See, e.g., United States v. Bradley*, ARMY 20150752, 2018 CCA LEXIS 56, at *12, (Army Ct. Crim. App. 29 Jan. 2018) (quoting *United States v Schupp*, ARMY 20160079, 2017 CCA LEXIS 466, at *3 (Army Ct. Crim. App. 12 Jul. 2017) "the unit of prosecution for sexual assault is each assault.")

To be sure, appellant's separate criminal acts took place in close proximity to each other, both in time and space. The military judge recognized this, and wisely mooted any resulting potential unfairness in appellant's punitive exposure by merging the specifications for sentencing. *Campbell*, 71 M.J. at 25.

## CONCLUSION

The findings of guilty and the sentence are AFFIRMED.

Senior Judge ALDYKIEWICZ and Judge WALKER concur.

FOR THE COURT:

MALCOLM H. SQUIRES, JR.
Clerk of Court