**UNITED STATES, Appellee**

v.

**Otis A. MARTINSMITH, Private
U.S. Army, Appellant.**

No. 93–1189.
CMR No. 9200946.

U.S. Court of Appeals for
the Armed Forces.

Argued Oct. 6, 1994.

Decided Jan. 31, 1995.

For Appellant: *Captain Charles A. Wynder, Jr.* (argued); *Lieutenant* Colonel James H. Weise, Major Fran W. Walterhouse, *Captain Christopher W. Royer* (on brief); *Lieutenant Colonel John T. Rucker and Major Michael A. Egan.*

For Appellee: *Captain Anthony P. Nicastro* (argued); *Colonel Dayton M. Cramer, Major James L. Pohl, Captain Gregory T. Baldwin* (on brief); *Colonel John M. Smith, Major Lyle D. Jentzer, Captain Robert J. Walters.*

*Opinion of the Court*

SULLIVAN, Chief Judge:

1. On April 17, 1992, appellant was tried by a general court-martial composed of officer and enlisted members at Schweinfurt, Germany. In accordance with a pretrial agreement he pleaded guilty to conspiring to commit larceny; desertion; failure to repair; disobedience of a lawful general regulation; and 14 specifications of larceny, in violation of Articles 81, 85, 86, 92, and 121, Uniform Code of Military Justice, 10 USC §§ 881, 885, 886, 892, and 921, respectively. Two larceny specifications were deemed multiplicious for sentencing with the other larceny specifications. He was sentenced by members to a dishonorable discharge, confinement for 15 years, total forfeitures, a fine of $23,100 (with additional confinement of 30 months if the fine is not paid), and reduction to Private E1. On October 20, 1992, the convening authority approved only so much of this sentence as provided for a dishonorable discharge, confinement for 7 years, total forfeitures, a fine of $15,000, and reduction to E1. The Court of Military Review[1] affirmed on May 27, 1993. 37 MJ 665.

■ 2. This Court granted review on November 24, 1993, on the following issue:

WHETHER THE MILITARY JUDGE ERRED TO THE PREJUDICE OF PVT MARTINSMITH BY NOT ALLOWING PVT MARTINSMITH TO ANSWER THE QUESTIONS OF A PANEL MEMBER PRIOR TO DELIBERATIONS ON SENTENCING.

We hold that no prejudicial sentencing error occurred as a result of the military judge's decision not to permit appellant to respond to a member's question concerning the whereabouts of the money which appellant admitted stealing. Art. 59(a), UCMJ, 10 USC § 859(a).

3. Appellant pleaded guilty, *inter alia*, to stealing 38 money orders. He also pleaded guilty to 12 specifications of stealing lawful currency in the amount of various money orders cashed on or about specific dates. Each money order was cashed for the maximum amount of $700.00 by appellant, his coconspirator Private First Class Lyn, or other unknown persons. The total amount cashed was around $23,100.00, and 5 money orders were not cashed or recovered.

4. After appellant's pleas of guilty to these offenses were accepted, the military judge conducted the sentencing portion of this court-martial. He instructed the members in part as follows:

MJ: One thing I neglected to cover with you when I was talking about the forfeitures of pay and allowance, and that is with regard to a fine. A fine, if you should adjudge a fine, becomes immediately payable to the government in the entire amount specified by the court, and if you wish to adjudge additional confinement to enforce payment of the fine, you may do so within the maximum limitation. That is the total confinement adjudged may not exceed seventy years, one month.

MBR (LTC [2] STECHER): Your Honor?

MJ: Yes, sir.

MBR (LTC STECHER): Does the fine come out of the pay that is left should we not take that money from him?

MJ: The fine comes out of any money that would be due and payable to the accused and would survive even after he's confined. A fine is a surviving debt to the government, as opposed to a forfeiture of pay. As I explained to you, a forfeiture is taken from pay as it accrues. A fine becomes, upon judgment of approval of the fine, makes the accused immediately liable to the United States for the entire amount specified in the sentence.

MBR (LTC BENJAMIN): If confinement were to be adjudged, where does the money, if there is also a fine, come from?

MJ: Well, I don't want to get into too many of the administrative consequences—

MBR (LTC BENJAMIN): I'm not sure—

MJ: —but it becomes a debt owed to the government by the accused and his pay, obviously, would not be the only source of payment of that fine. . . .

MBR (1SG [3] TATE): *Sir, I don't know whether this question is appropriate, but I want to ask the accused, you know, where is this money. That's the question, and*

---

1. *See* 41 MJ 213, 229 n. * (1994).

2. Lieutenant Colonel.

3. First Sergeant.

*we can never ask that. He said this $23,-000.00 has gone somewhere, but yet he says he has no money, and that's going to be a big deciding factor of mine, according to what punishment he should get.*

MJ: *I'll give you an instruction in just a minute on that particular aspect, why you can't ask him that question. Okay?*

MBR (LTC STECHER): Sir, one more clarification.

MJ: Yes, sir.

MBR (LTC STECHER): So, should, then, we not forfeit all of his money, he should have money coming to him while in prison. That fine—and we did instill a fine, then that money could be used to pay that fine from his base pay?

MJ: That's right.

MBR (LTC BENJAMIN): That was really the question. I just couldn't ask it right.

DC: *Pardon me, Your Honor. Based upon a question from the panel, I've discussed it with Private Martinsmith and he would be willing to make a sworn statement and answer that question. Since the court has not closed for actual deliberations, defense would ask that that be allowed.*

MJ: *A sworn statement?*

DC: *So that he could be asked the question.*

MJ: Trial Counsel, any objection?

TC: Yes, sir. The government—the defense has rested and all the facts are in the Stipulation of Fact. Anything that could be added to that by the accused at this time are superfluous.

MJ: *I'm going to not allow the defense to reopen. You will just have to make your decisions based on the evidence before the court. If we allow that to happen at this time, then it's going to allow the government to then rebut the evidence and so forth, and we get into other areas that may or may not be a proper concern to the court.*

\* \* \*

Now, before proceeding, does counsel for either side have any objection to the instructions as given or requests for additional instructions?

TC: No, sir.

DC: *No, Your Honor. Defense would offer, also, in response to the question from the panel member, to make an unsworn statement as to the status of the money.*

MJ: *Again, Counsel, that's going to cause a potential reopening of the evidence and it's untimely.*

Questions by any member of the court?

Apparently not.

(Emphasis added.)

5. After trial, defense counsel submitted a petition for clemency under RCM 1105, Manual for Courts–Martial, United States, 1984. He stated, *inter alia:*

The following matters are submitted in support of this petition:

a. While PV2 Martinsmith certainly deserves to be punished for his crimes, the fine adjudged in this case is excessive. *See enclosed* a personal, hand-written appeal from PV2 Martinsmith, where he explains what happened to the money he and PFC Wayne Lyn stole from the Post Office. Even at trial, in response to a question from a panel member, PV2 Martinsmith wanted to explain in detail where the money went—but the Military Judge refused to let PV2 Martinsmith resume the stand to answer the question. *See* Record of Trial (ROT) pp. 141–142 & 147. Defense believes the Military Judge erred by not allowing PV2 Martinsmith [to] give the court this information, information that the panel members clearly wanted to hear prior to considering what was appropriate punishment for PV2 Martinsmith. Also, during Defense Counsel's closing argument, the Military Judge refused to let Defense Counsel point out that PV2 Martinsmith has no money with which to pay a fine—even though this was the very information which the panel obviously wished to hear. ROT pp. 128, 141–142, & 147.

b. PV2 Martinsmith's accomplice in this case, PFC Lyn, only received 18 months' confinement—and no fine—at his trial. This gross disparity in punishment for the two accomplices is all the more

indefensible when considering that, from all available information, it appears PFC Lyn benefited more from the stolen money than did PV2 Martinsmith.

6. Appellant also made a statement attached to this petition for clemency. He stated:

There is a technicality in my case that I would like to bring to light. There was a co-conspirator involved in the commitment of the crimes, plotted equally by both of us. The other party involved received only a[n] 18–month sentence compared to my original fifteen year sentence. He, PFC Lyn, used a vast majority of the stolen funds to help support his family, by paying off debts, and some home improvement work. Also $7,000.00 of the money he possessed is now in the possession of the U.S. government. The only expense I received from any of the funds was a $300.00 ticket to England and food expenses along with lodging for one week. There is also some personal property of mine that was seized by the English authorities which was at PFC Lyn's house when he was apprehended. I would like to know how I may be able to receive this property back from the English or American authorities, in order to be shipped to my home of record.

7. Finally, the staff judge advocate in an addendum to his post-trial recommendation commented on this issue as follows:

[a.] The enclosed RCM 1105 Request for Clemency has been submitted by the accused's defense counsel and is presented to you for review. RCM 1107 requires you to consider the matters prior to taking action on the case.

[b.] The accused requests, through his defense counsel, that you disapprove the fine adjudged. He asserts that the military judge prevented him from answering a member's question, posed after argument by both counsel, regarding what he did with the stolen $23,100.00. While I do not find the court's ruling clearly erroneous, some prejudice may have accrued to the accused as a result of the stringent ruling. I recommend a reduction in the fine to offset any such prejudice and in light of additional matters raised.

[c.] I recommend that you approve only so much of the sentence as provides for forfeiture of all pay and allowances, a fine of $15,000.00 to be paid to the United States, reduction to the grade of E1, confinement for 7 years, and a dishonorable discharge. If you agree with this recommendation, an action designed to accomplish the foregoing is attached and should be signed by you.

8. The convening authority took this advice and reduced appellant's fine to $15,000.00. He also did not approve the part of the sentence providing for him to "serve additional confinement for 30 months if fine is not paid" and reduced his confinement from 15 to 7 years. Only the latter reduction was required by his pretrial agreement with appellant.

_____

9. The granted issue viewed in the above context raises three related but nonetheless distinct questions of law. The first question is whether the military judge erred in refusing to permit a member to ask appellant where the stolen $23,100.00 was. *See United States v. Carter,* 40 MJ 102, 104 ¶¶ 15–19 (CMA 1994). The member asked this question in apparent response to trial counsel's argument on appellant's unjust enrichment and defense counsel's objected-to-argument that appellant had no money. The military judge indicated that he would not ask appellant the member's question for a reason to be disclosed later. In his closing instructions he later stated:

The accused cannot be cross-examined by the prosecution or interrogated by court members or myself upon an unsworn statement, but the prosecution may offer evidence to rebut statements of fact contained in it.

\* \* \*

Hopefully, that clarifies your question there, First Sergeant, or at least gives you better understanding.

MBR(1SG TATE): A little bit, sir.

10. Article 46, UCMJ, 10 USC § 846, provides:

### § 846. Art. 46. Opportunity to obtain witnesses and other evidence

The trial counsel, the defense counsel, and *the court-martial shall have equal opportunity to obtain witnesses and other evidence in accordance with such regulations as the President may prescribe.* Process issued in court-martial cases to compel witnesses to appear and testify and to compel the production of other evidence shall be similar to that which courts of the United States having criminal jurisdiction may lawfully issue and shall run to any part of the United States, or the Territories, Commonwealths, and possessions.

(Emphasis added.)

11. On its face, this statute requires that a member's request for evidence be considered in light of presidential rulemaking pertaining to admissibility of evidence at courts-martial. *See United States v. Jones,* 26 MJ 197 (CMA 1988); *United States v. Carr,* 18 MJ 297 (CMA 1984).

12. Mil.R.Evid. 614, Manual, *supra,* further provides:

### Rule 614. Calling and Interrogation of witnesses by the court-martial

(a) *Calling by the court-martial.* The military judge may, sua sponte, or at the request of the members or the suggestion of a party, call witnesses, and all parties are entitled to cross-examine witnesses thus called. *When the members wish to call or recall a witness, the military judge shall determine whether it is appropriate to do so under these rules or this Manual.*

(b) *Interrogation by the court-martial.* The military judge or members may interrogate witnesses, whether called by the military judge, the members, or a party. Members shall submit their questions to the military judge in writing so that a ruling may be made on the propriety of the questions or the course of questioning and so that questions may be asked on behalf of the court by the military judge in a form acceptable to the military judge. When a witness who has not testified previously is called by the military judge or the members, the military judge may conduct the direct examination or may assign the responsibility to counsel for any party.

(c) *Objections.* Objections to the calling of witnesses by the military judge or the members or to the interrogation by the military judge or the members may be made at the time or at the next available opportunity when the members are not present.

(Emphasis added.) Fed.R.Evid. 614 does not expressly confer such a right on a member of a jury in Federal court.[4]

13. The Manual for Courts–Martial, in pertinent part, also provides that an accused can make an unsworn statement on sentencing. RCM 1001(c)(2)(A) and (C) provides:

(2) *Statement by the accused.*

(A) *In general.* The accused may testify, *make an unsworn statement,* or both *in extenuation, in mitigation,* or to rebut matters presented by the prosecution, or for all three purposes whether or not the accused testified prior to findings. The accused may limit such testimony or statement to any one or more of the specifications of which the accused has been found guilty. This subsection does not permit the filing of an affidavit of the accused.

(Emphasis added.)

14. However, it further states:

(C) *Unsworn statement. The accused may make an unsworn statement and may not be cross-examined by the trial counsel upon it or examined upon it by the court-martial.* The prosecution may, however, rebut any statements of facts therein. The unsworn statement may be

---

4. The right of a court member to call for additional evidence at court-martial is somewhat unique to military law. *See United States v. Parker,* 7 USCMA 182, 185–86, 21 CMR 308, 311–12 ¶¶ 7–11 (1956). *Cf. Day v. Kilgore,* —— S.C. ——, 427 S.E.2d 683, 685 ¶ 10 (S.C.App. 1992).

oral, written, or both, and may be made by the accused, by counsel, or both.

(Emphasis added.)

15. This Court has also held that the right of a court member to obtain evidence is not absolute. Chief Judge Everett in *United States v. Lampani*, 14 MJ 22, 26 ¶ 15 (CMA 1982), more particularly explained the factors which might limit this statutory right. He stated:

> The Government argues that a military judge has discretion to determine whether a witness is called or some additional investigation is performed. We agree that the right of the court members to obtain additional evidence is not absolute. Difficulty in obtaining witnesses and concomitant delay; the materiality of the testimony that a witness could produce; *the likelihood that the testimony sought might be subject to a claim of privilege;* and the objections of the parties to reopening the evidence are among the factors the trial judge must consider. However, clearly a military judge cannot exercise his discretion in an informed manner without obtaining some indication from the court members as to the witnesses whom they desire to call. . . .

(Emphasis added.)

16. Turning to the present case, we note that the evidence sought by the member was protected by a qualified Manual privilege and was not subject to compelled discovery by a court-martial. RCM 1001(c)(2)(C). Accordingly, no error occurred when the judge initially denied the member's request to question appellant on this matter. *See United States v. Jones*, 26 MJ 197, 199 ¶¶ 12–14 (CMA 1988); *see generally* 3 Wigmore, *Evidence* § 784a at 199–200 (Chadbourn rev. 1970); Annotation, *Jurors Questioning Witnesses in Federal Court*, 80 ALR Fed. 892 (1986).[5]

17. The second question in this case is whether the military judge erred in denying the defense request to reopen its case to respond to the member's question. RCM 913(c)(5) provides: *"Reopening Case.* The military judge may, as a matter of discretion, permit a party to reopen its case after it has rested." We will review the judge's ruling on such a request under an abuse-of-discretion standard. *See United States v. Ray*, 26 MJ 468, 470–71 ¶ 9 (CMA 1988), *cert. denied*, 488 U.S. 1010, 109 S.Ct. 797, 102 L.Ed.2d 788 (1989); *see generally United States v. Paz*, 927 F.2d 176, 179 ¶ 8 (4th Cir.1991).

18. We initially note that defense counsel offered to reopen its case to introduce a "sworn statement" from the accused. *Cf. United States v. Gonzalez*, 16 MJ 58 (CMA 1983) (held affidavits from sentencing witnesses other than accused admissible at courts-martial). The Manual for Courts–Martial, however, does not technically provide for evidence to be presented in this form by an accused during sentencing. RCM 1001(c)(2)(B) more particularly provides:

> (B) *Testimony of the accused.* The accused may give *sworn oral testimony* under this paragraph and *shall be subject to cross-examination concerning it by the trial counsel* or examination on it by the court-martial, or both.

(Emphasis added.) Rules providing for reopening a party's case do not contemplate jettisoning other applicable Manual rules. *See* RCM 1001(c)(2)(A). Accordingly, if the words "sworn statement" meant something other than sworn testimony subject to cross-examination (*cf. United States v. Proctor*, 34 MJ 549, 558 ¶ 41 (AFCMR 1992) (military judge explained oral sworn statement by accused in court was subject to cross-examination)), the defense request could have been properly denied on this basis alone. *See Smith v. Campbell*, 781 F.Supp. 521, 532–33 ¶¶ 46–50 (M.D.Tenn.1991), *aff'd*, 961 F.2d

---

5. An exhaustive survey of Federal and state jurisdictions on the right of a jury member to question a witness in a criminal trial is contained in the various opinions of the judges in *Morrison v. State*, 845 S.W.2d 882 (Tex.Crim.App.1992)(*en banc*). The majority of jurisdictions including the Federal courts reluctantly permit such questioning in the sound discretion of the trial judge. *Id.* at 901 ¶ 34 (Campbell, J., dissenting); at 904 ¶ 51 (Benavides, J., dissenting). *Cf. United States v. Welliver*, 976 F.2d 1148, 1154–55 ¶ 30 (8th Cir.1992) (expression of "strong concern" against this practice).

1578 (6th Cir.), *cert. denied,* — U.S. —, 113 S.Ct. 423, 121 L.Ed.2d 345 (1992).

■ 19. In any event, the military judge denied the defense request to reopen its case on the express bases that evidence sought would be cumulative of evidence contained in the stipulation of fact already admitted in this case and his concern that this litigation would become unnecessarily protracted. We note that there is ample evidence in this record of trial suggesting appellant's partner cashed most of the stolen money orders. We also note that there were 38 money orders stolen and proof of the disposal of each one, on different days, different places, and for different purposes would be time consuming at this late stage of the proceedings. *See United States v. Ray,* 26 MJ at 470–71 ¶¶ 9–11. In view of these circumstances and the undelineated proffer of defense counsel, we find no abuse of discretion by the judge in denying this request by the defense to reopen its case. *See also United States v. Carter, supra.*

■ 20. The third question we will address is whether the military judge erred in later refusing to allow the defense to reopen its case to present an unsworn statement as to the status of the money. In appellant's case, any claim of infringement of his right to present an unsworn statement must be viewed in the context that he had previously exercised his right to make an unsworn statement and he had not chosen to make this matter an important part of it. Moreover, for the reasons stated earlier, this request was certainly belated and had clear potential for protracting this litigation. Nevertheless, it is well established that an accused servicemember's right of allocution is considered an important right at military law, whose curtailment is not to be lightly countenanced. *See United States v. Provost,* 32 MJ 98, 100 ¶ 8 (CMA 1991); *United States v. Rosato,* 32 MJ 93, 96–97 ¶¶ 10–11 (CMA 1991). In any event, we need not decide this difficult question today.

■ 21. Any prejudice to appellant resulting from a possibly erroneous restriction of his right to submit an unsworn statement was substantially cured by the convening authority's post-trial action in this case. Art. 59(a). In this regard, we note that the stipulation of fact provided a detailed account of Private Lyn's role in the stolen-check scheme and fairly suggested the monies he derived from it. Moreover, appellant's untested post-trial submission further minimizing the benefit he derived from this scheme is not essentially inconsistent with this stipulation. *See also United States v. Williams,* 21 MJ 360, 362 ¶ 11 (CMA 1986). Finally, the staff judge advocate advised the convening authority concerning the possibility of error by the judge on this basis and recommended a $8,100.00 reduction in the fine. The convening authority did in fact reduce the adjudged fine by $8,100.00 from 23,100.00 to $15,000.00. In these circumstances, we find no prejudicial error. *Cf. United States v. Provost, supra* at 100; *United States v. Rosato, supra.*

The decision of the United States Army Court of Military Review is affirmed.

Judges COX, CRAWFORD, and WISS concur.

GIERKE, Judge (concurring in the result):

22. I do not join that part of the majority opinion suggesting that the defense offer of a "sworn statement" may have been an attempt to offer an affidavit or a written statement in response to the court member's question. 41 MJ at 348 ¶ 18. I do not believe that the majority's interpretation of the defense offer is justified by the record or common trial practice. My reading of the record is that defense counsel offered to have his client answer the question orally and under oath, which would have been permissible. *See* RCM 1001(c)(2)(B), Manual for Courts–Martial, United States, 1984.

23. The record reflects that appellant gave unsworn testimony during the sentencing hearing. As the military judge was instructing the court members on the sentence limitations, a court member made the following comments to the military judge:

Sir, I don't know whether this question is appropriate, but I want to ask the accused, you know, where is this money. That's the question, and we can never ask that. He

said this $23,000.00 has gone somewhere, but yet he says he has no money, and that's going to be a big deciding factor of mine, according to what punishment he should get.

24. The military judge told the member that he would explain later "why you can't ask him that question."

25. After another member continued the inquiry about appellant's finances by asking how a fine would be paid, defense counsel interjected with the following offer:

Pardon me, Your Honor. Based upon a question from the panel, I've discussed it with Private Martinsmith and *he would be willing to make a sworn statement and answer that question....*

(Emphasis added.)

26. The military judge, apparently noting a change in tactics since appellant's preceding statement on sentencing had been unsworn, asked, "A sworn statement?" Defense counsel responded, "So that he could be asked the question."

27. When the military judge refused to allow the defense to reopen for the purpose of answering the member's question under oath, defense counsel modified his offer, stating:

Defense would offer, also, *in response to the question from the panel member, to make an unsworn statement as to the status of the money.*

(Emphasis added.) The military judge refused to permit any further unsworn statements.

28. In his post-trial submission, defense counsel complained that "the Military Judge refused to let PV2 Martinsmith *resume the stand to answer the question.*" (Emphasis added.) The staff judge advocate submitted an addendum to his post-trial recommendation to the convening authority, characterizing the defense complaint as stating that "the military judge prevented him from answering a member's question."

29. It was obvious to all parties that appellant was offering to answer the question orally, either under oath or unsworn. He was not offering to submit a written statement.

30. The terminology used by defense counsel was not unusual. To the contrary, it was terminology commonly used by trial practitioners. *See* D. Schlueter, *Military Criminal Justice: Practice and Procedure* § 16.6 at 639–40 (3d ed.1992) (judge should advise accused of allocution rights: "the right to present an oral sworn statement; the right to make an unsworn statement, either personally or through counsel; ... *If the accused makes a sworn statement, he is treated as any other witness and is subject to cross-examination and impeachment.*" (Emphasis added.))

31. I do not reach the question whether the military judge abused his discretion by refusing to allow appellant to answer the member's question, because I am satisfied that the impact of any error was purged by the convening authority's action.