# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

———————————

**No. ACM 22091**

———————————

**UNITED STATES**
*Appellee*

**v.**

**Cameron N. HOGANS**
Senior Airman (E-4), U.S. Air Force, *Appellant*

———————————

Appeal from the United States Air Force Trial Judiciary[1]

Decided 22 January 2025

———————————

*Military Judge*: Elijah F. Brown.

*Sentence*: Sentence adjudged on 5 May 2022 by SpCM convened at Luke Air Force Base, Arizona. Sentence entered by military judge on 21 June 2022: Confinement for 3 months, forfeiture of $1,222.00 pay per month for 3 months, reduction to E-1, and a reprimand.

*For Appellant*: Colonel Anthony D. Ortiz, USAF.

*For Appellee*: Colonel Zachary T. Eytalis, USAF; Major Brittany M. Speirs, USAF; Captain Tyler L. Washburn, USAF; Mary Ellen Payne, Esquire.

Before ANNEXSTAD, DOUGLAS, and PERCLE, *Appellate Military Judges*.

Judge DOUGLAS delivered the opinion of the court, in which Senior Judge ANNEXSTAD and Judge PERCLE joined.

———————————

---

[1] Appellant appeals his conviction under Article 66(b)(1)(A), Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 866(b)(1)(A). *See Manual for Courts-Martial*, *United States* (2024 ed.).

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 30.4.**

———————————————

DOUGLAS, Judge:

Appellant entered mixed pleas at a special court-martial. A military judge found Appellant guilty after accepting his pleas of guilty as provident to two specifications of wrongful use of drugs, specifically cocaine and marijuana, each on divers occasions, in violation of Article 112a, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 912a.[2] At the same court-martial a panel comprised of officer and enlisted members convicted Appellant, contrary to his pleas, of one specification of wrongful use of lysergic acid diethylamide (LSD), on divers occasions, and one specification of wrongful use of 3,4-methylenedioxymethamphetamine (MDMA), a Schedule I controlled substance, in violation of Article 112a, UCMJ. The trial judge sentenced Appellant to confinement for three months, forfeiture of $1,222.00 pay per month for 3 months, reduction to the grade of E-1, and a reprimand.[3] The convening authority took no action on the findings or sentence; he provided the language for the reprimand.

Appellant raises three issues on appeal which we have rephrased: whether (1) the trial judge abused his discretion by denying a defense motion to exclude video evidence based upon a late discovery notice; (2) the trial judge abused his discretion, and abandoned his neutral role, when he allowed the Government to reopen its case to establish a missing element of wrongful use of MDMA; and (3) the conviction for wrongful use of MDMA was legally and factually sufficient.

We find no error that materially prejudiced Appellant's substantial rights, and we affirm the findings and sentence.[4]

---

[2] Unless otherwise noted, all references to the UCMJ are to the *Manual for Courts-Martial, United States* (2019 ed.).

[3] The trial judge specifically sentenced Appellant to three months' confinement for using cocaine on divers occasions, one month's confinement for using marijuana on divers occasions, three months' confinement for using LSD on divers occasions, and two months' confinement for wrongfully using MDMA, a Schedule I controlled substance, with all periods of confinement to run concurrently.

[4] We note Appellate Exhibit X, described in the record as containing a video montage, instead includes over three hours of witness interviews. Appellant does not assert prejudicial error, and we find none.

## I. BACKGROUND

Appellant was stationed at Luke Air Force Base (AFB), Arizona. He and his friends socialized together during their off-duty hours. On multiple occasions, between March 2020 and March 2021, Appellant wrongfully used cocaine and marijuana with these friends. One of his friends, Airman Basic (AB) BM, testified against him, under a grant of immunity, after she had served her sentence issued by a summary court-martial for her own drug use. She witnessed Appellant wrongfully use LSD on multiple occasions in 2020, as well as use MDMA, a Schedule I controlled substance.

At trial, trial defense counsel moved to exclude video evidence of Appellant's hands with LSD tabs in his palms due to a purported discovery violation. The Government objected and explained they had provided the evidence to the Defense as soon as they received it; they had only received the evidence the night before trial. The trial judge ruled the discovery of the evidence on the eve of trial was not due to a discovery violation because the Defense did not request the evidence with "sufficient precision to enable the trial counsel to locate it." Nonetheless, the trial judge offered the Defense a continuance, which they rejected due to Appellant's desire "to pursue justice." Trial defense counsel's preferred remedy was exclusion. The trial judge determined exclusion of the evidence would be "too severe considering the circumstances of the late disclosure" and "hinder the truth-finding function" of the court. The trial judge admitted the 17-second video as Prosecution Exhibit (PE) 1.

## II. DISCUSSION

### A. Defense Motion to Exclude Video Evidence Based Upon a Late Discovery Notice

On appeal, Appellant submits the trial judge erred by not finding the late disclosure a discovery violation. Consequently, Appellant claims the appropriate remedy was exclusion of the evidence. We find the trial judge did not abuse his discretion when he admitted PE 1.

#### 1. Additional Background

In March or April of 2020, Appellant's friend, AB BM, had recorded a video on her cell phone of several sets of hands, palms up, stacked above each other, holding LSD tabs. The video of these hands does not show the faces of the persons in the video.

The Air Force Office of Special Investigations (OSI) at Luke AFB had seized AB BM's cell phone in March 2021 and performed an extraction of the contents of the phone utilizing the Cellebrite tool, including video evidence of drug use. However, the extraction may not have been complete at OSI due to the limited

storage capacity at OSI. The cell phone was over five years old and contained at least 7,000 photos and 1,000 videos. Although OSI searched the contents for evidence of drug use by AB BM, they did not find this particular video (PE 1). OSI maintained possession of AB BM's cell phone for over 13 months, as well as the extraction report.

On 6 October 2021, trial defense counsel submitted their initial discovery request. Among other listed items, the Defense requested:

> Access to, copies of, and a descriptive list of any physical evidence or photographs, in the Government's custody or control, seized, recorded, or reviewed during this [sic] investigation of this case, whether relied upon in charging or not. A list/copy of documents and other real evidence and location the Government intends to use at any trial findings, or presentencing, including rebuttal.

> Any books, papers, documents, photographs, tangible objects, buildings, or places, or copies of portions thereof, which are within the possession, custody, or control of military authorities and are material [sic] to the preparation of the Defense or are intended for use by trial counsel as evidence in the prosecution case-in-chief or presentencing, or were obtained from or belong to the Accused. [Rule for Courts-Martial (R.C.M.)] 701(a)(2)(A).

> Disclosure of the existence of and copies of any audio/visual representations or renditions in the possession of any governmental agency or employee which could have any bearing whatsoever on this case.

Later, in November or December 2021, AB BM specifically informed OSI, during the course of the investigation against her, that her cell phone contained photographs and videos of illicit drug use by herself and others.

Approximately ten days before Appellant's trial, on 22 April 2022, AB BM received her cell phone back from OSI. On 1 May 2022, the day before trial, AB BM was interviewed by trial defense counsel. Trial defense counsel asked AB BM to look for a particular photo. Consequently, the night before Appellant's trial, AB BM was looking through her phone's photographs, videos, and text messages for the photo trial defense counsel requested, when she found the video now identified as PE 1. The same evening that she discovered this video, she provided it to her defense counsel. Her defense counsel then sent it to the trial counsel, who in turn, disclosed it to Appellant's trial defense counsel, who received it at approximately 2200 hours the same evening. Previous to this disclosure, trial counsel had disclosed other photos and another video from AB BM's phone to trial defense counsel.

Upon questioning from the trial judge, trial defense counsel admitted they had not "seen the extraction pull." However, they did not explain if they had been to OSI and tried to review the extraction pull or AB BM's cell phone. Neither at trial, nor on appeal, does Appellant proclaim he was not permitted to inspect relevant documents, photographs, videos, tangible objects, or reports maintained by military authorities.

**2. Law**

A trial judge's ruling on discovery and choice of remedy for a discovery violation is reviewed for an abuse of discretion. *United States v. Vargas*, 83 M.J. 150, 153 (C.A.A.F. 2023) (citing *United States v. Stellato*, 74 M.J. 473, 480 (C.A.A.F. 2015)). "An abuse of discretion occurs when the military judge either applied the law erroneously or clearly erred in making findings of fact. An abuse of discretion must be more than a mere difference of opinion. The challenged action must be arbitrary, fanciful, clearly unreasonable, or clearly erroneous." *United States v. Black*, 82 M.J. 442, 451 (C.A.A.F. 2022).

"In a case referred for trial by court-martial, the trial counsel, the defense counsel, and the court-martial shall have equal opportunity to obtain witnesses and other evidence in accordance with such regulations as the President may prescribe." Article 46, UCMJ, 10 U.S.C. § 846.

Military discovery practice is broad and liberal. *See United States v. Williams*, 50 M.J. 436 (C.A.A.F. 1999). After service of charges and upon request of the defense, "the Government shall permit the defense to inspect any books, papers, documents, data, photographs, tangible objects, buildings, or places, or copies of portions of these items, if the item is within the possession, custody, or control of military authorities;" however, (1) "the item [must] be relevant to defense preparation;" (2) "the government intends to use the item in the case-in-chief at trial;" (3) "the government anticipates using the item in rebuttal;" or (4) "the item was obtained from or belongs to the accused." R.C.M. 701(a)(2)(A)(i)–(iv).

An accused's right to discovery "includes materials that would assist the defense in formulating a strategy." *United States v. Luke*, 69 M.J. 309, 320 (C.A.A.F. 2011) (citing *United States v. Webb*, 66 M.J. 89, 92 (C.A.A.F. 2008)). "A request for information under R.C.M. 701(a)(2) must be specific enough that the trial counsel, through the exercise of due diligence, knows where to look (or where to provide the defense access)." *United States v. Shorts*, 76 M.J. 523, 535 (A. Ct. Crim. App. 2017).

Whenever during a court-martial proceeding it is brought to the attention of the trial judge that a party has failed to comply with R.C.M. 701(g)(3), *Failure to comply*, the trial judge may take one or more of the following actions: (1)

"[o]rder the party to permit discovery;" (2) "[g]rant a continuance;" (3) "[p]rohibit the party from introducing evidence, calling a witness, or raising a defense not disclosed;" or "[e]nter such other order as is just under the circumstances." R.C.M. 701(g)(3)(A)–(D).

Trial counsel must, as soon as practicable, disclose to the defense the existence of evidence known to trial counsel which reasonably tends to: (1) "[n]egate the guilt of the accused of an offense charged;" (2) "[r]educe the degree of guilt of the accused of an offense charged;" (3) "[r]educe the punishment;" or (4) "[a]dversely affect the credibility of any prosecution witness or evidence." R.C.M. 701(a)(6); *see also Stellato*, 74 M.J. at 486–87 (where "a trial counsel cannot avoid discovery obligations by remaining willfully ignorant of evidence that reasonably tends to be exculpatory . . .").

### 3. Analysis

On appeal, Appellant avers the Government had a duty to search for and provide PE 1, pursuant to R.C.M. 701(a)(2)(A), because it was relevant to defense preparation, and because the Government intended to use this evidence in their case-in-chief at trial. Appellant would have us determine the Government committed a discovery violation by failing to adequately search for PE 1, after the Defense's discovery request specifically requested the items listed in R.C.M. 701(a)(2)(A), as well as "any audio/visual representations or renditions in the possession of any government agency or employee which could have any bearing whatsoever on this case."

On appeal, the Government appears to concede they committed a discovery violation stating, "The failure of trial counsel to provide either access to AB [BM]'s phone or a copy of the data extracted from it therefore represented a violation of trial counsel's obligation to provide discovery to Appellant under R.C.M. 701(a)(2)(A)." Despite Government's attempt to concede error, the record simply does not support the contention the Government failed to provide access to the extraction. No one—not the trial judge, not the trial counsel, nor the trial defense counsel—suggested trial counsel failed to provide access to AB BM's phone, or the copy of the data extracted from it. Regardless of this position on appeal, the Government maintains the remedy the trial judge chose was appropriate.

As a threshold matter, we consider whether PE 1, the video evidence, could be characterized as favorable to the Defense. If favorable to the Defense, the analysis pivots to include other facts, circumstances, and rules (*e.g.*, R.C.M. 701(a)(6); *Stellato*, 74 M.J. at 486–87). Neither Appellant, nor the Government, describe PE 1 as favorable to the Defense. Here, PE 1 inculpated Appellant, as well as others, in that AB BM testified Appellant's hands were shown with LSD tabs on his palms. Notably, the video excerpt that was admitted as PE 1,

while relevant and otherwise admissible in Appellant's trial, went unnoticed by law enforcement and both trial and defense counsel, until provided by AB BM the evening before trial. AB BM provided the video as evidence supporting her testimony against Appellant. Her review of her cell phone was initiated due to a request from Appellant's trial defense counsel. Importantly, this evidence was never withheld by the Government, nor was notice of its existence, once discovered, withheld.

The Government is required to provide to the Defense *access to inspect* documents, tangible objects, and reports. R.C.M. 701(a)(2)(A). The Government's requirement to provide access does not vitiate Appellant's opportunities to inspect the documents, tangible objects, and reports of Appellant case, or those of closely related cases, such as AB BM's. In this case, the investigation into AB BM and her drug use was related to Appellant's offenses because, as the record reflects, they wrongfully used drugs together. The record does not reflect the Government inhibited in any way the Defense's ability to inspect AB BM's cell phone or the Cellebrite report maintained by OSI.

The trial judge determined that the late notice of the discovery of the video on AB BM's cell phone, PE 1, was not a discovery violation, because the Defense did not request it "with sufficient precision to enable the trial counsel to locate it," citing *Shorts*, 76 M.J. at 535. But more simply, the record does not reflect the Government failed to provide material that would assist the Defense in formulating a strategy. *Luke*, 69 M.J. at 319–20. First, the Defense was aware of this evidence by the time Appellant entered his pleas. Second, the strategy employed by the defense team was to attack the ability of AB BM to recall and state with accuracy her memory of Appellant's use of these drugs. The Defense also called a memory expert to provide opinion evidence as to one's ability to recall when she too was wrongfully using drugs. Further, the Government clearly was not intending to use PE 1 in their case-in-chief at trial until they learned of its existence the night before trial began. After certain defense objections, trial counsel removed portions of the exhibit before final admission and publishing. Finally, at the time they were specifically provided this video, through AB BM, the Government immediately disclosed it to Appellant, without delay, and before arraignment. For all the above reasons, we find the trial judge's conclusion that the notice of the video was not a discovery violation was not an abuse of discretion.

Additionally, the trial judge's decision to admit the evidence, rather than exclude it, was also not an abuse of discretion. Despite determining the notice on the eve of trial was not a discovery violation, the trial judge offered trial defense counsel a continuance, which they summarily rejected. The trial judge's decision that exclusion would be too severe a remedy also was not an

abuse of discretion. Neither decision is arbitrary, fanciful, clearly unreasonable, or clearly erroneous. *Black*, 82 M.J. at 451.

## B. Trial Judge's Ruling Allowing Government to Reopen Its Case to Establish a Missing Element

On appeal, Appellant submits the trial judge misapplied R.C.M. 917 by allowing the Government to reopen its case, without first inquiring as to the reasoning for their failure to present evidence on this aspect of Specification 2 of the Additional Charge. Appellant argues that the trial judge's decision to identify the deficiency for the Government gave the appearance of impartiality. The Government disagrees and submits that R.C.M. 917(a) clearly allows the trial judge to *sua sponte* make the motion for a finding of not guilty. We find the trial judge did not abuse his discretion when he allowed the Government to reopen its case.

### 1. Additional Background

After the Government rested its case in findings, and just before the Defense rested its case in findings, the trial judge raised *sua sponte* a motion for a finding of not guilty of Specification 2 of the Additional Charge (wrongful use of MDMA) pursuant to R.C.M. 917. His rationale was that "no evidence had been offered for the members to find that [MDMA] was a controlled substance." He added:

> As to, you know, the fairness or propriety of sort of flagging this, or the judge *sua sponte* raising the issue, the alternative would be for me to permit the case to go to the panel when there's no legal possibility for the panel members to reach a finding of guilty on that specification. So it just doesn't seem appropriate for the members to be charged with deliberating on an offense that they cannot legally find the member [ ] guilty of. So, so that was the alternative, which I don't think serves the interests of justice.

The trial judge offered each party an opportunity to be heard. The Government did not object to the trial judge's offer, cited R.C.M. 917(c) and its discussion, and requested to reopen its case. The Defense did object, and advocated the trial judge is not required to allow the Government to reopen its case, and if the trial judge did, it would be an injustice to "the system."

Once the Government requested to reopen its case in findings, the trial judge allowed the Government to do so. Special Agent (SA) JF, a member of the local OSI unit, testified that he was familiar with the Drug Enforcement Administration (DEA) list of controlled substances due to his role as a criminal investigator, and his training. He identified MDMA as being on the DEA list of Schedule I controlled substances. Trial defense counsel cross-examined SA

JF, who confirmed he had not investigated "an MDMA case" even though SA JF did investigate Appellant for allegations of wrongful use of controlled substances.

**2. Law**

A trial judge's decision to allow a party to reopen its case is reviewed for abuse of discretion. *See United States v. Satterley*, 55 M.J. 168, 171 (C.A.A.F. 2001) (citations omitted); *United States v. Martinsmith*, 41 M.J. 343, 348 (C.A.A.F. 1995). "This abuse of discretion standard is a strict one, calling for more than a mere difference of opinion—[t]he challenged action must be arbitrary, fanciful, clearly unreasonable, or clearly erroneous." *United States v. St. Jean*, 83 M.J. 109, 112 (C.A.A.F. 2023) (alteration in original) (citing *United States v. Hendrix*, 76 M.J. 283, 288 (C.A.A.F. 2017)).

A trial judge "may, as a matter of discretion, permit a party to reopen its case after it has rested." R.C.M. 913(c)(5); *see also Satterley*, 55 M.J. at 171 (recognizing the "discretionary power of [a] judge to reopen a case"). The trial judge, "on motion by the accused or *sua sponte*, shall enter a finding of not guilty of one or more offenses charged at any time after the evidence on either side is closed but prior to entry of judgment if the evidence is insufficient to sustain a conviction of the offense affected." R.C.M. 917(a).

In the case of a motion for a finding of not guilty, "[t]he motion shall specifically indicate wherein the evidence is insufficient." R.C.M. 917(b). "Before ruling on a motion for a finding of not guilty, whether made by counsel or *sua sponte*, the military judge shall give each party an opportunity to be heard on the matter." R.C.M. 917(c). For such a motion, "the military judge ordinarily should permit the trial counsel to reopen the case as to the insufficiency specified in the motion before findings on the general issue of guilt are announced." R.C.M. 917(c), Discussion.

**3. Analysis**

Appellant states in his written brief that the trial judge's identification of the Government's insufficiency of proof in its case gave the appearance of his impartiality. We disagree. Indeed, from our review of the record, we find no facts indicating the trial judge acted with any personal bias, prejudice, or partiality in this case.

Next, we consider whether the trial judge abused his discretion when he (1) *sua sponte* moved for a finding of not guilty when the Government had not admitted evidence of MDMA being a Schedule I controlled substance relating to Specification 2 of the Additional Charge, and (2) granted the Government the opportunity to reopen its case. We find he did not abuse his discretion in either respect.

The trial judge *sua sponte* raised the issue of insufficiency of proof as to Specification 2 of the Additional Charge because the Defense had not raised the issue. Explaining that he was concerned about allowing the members to deliberate upon Appellant's guilt for wrongful use of MDMA without any evidence admitted regarding it being a Schedule I controlled substance as charged, the trial judge properly followed the procedural aspects of R.C.M. 917(c). Specifically, this procedural rule outlines that before ruling on a motion for a finding of not guilty, whether made by counsel or *sua sponte*, the trial judge shall give each party an opportunity to be heard on the matter. This trial judge complied with this procedural requirement. The trial judge did not misapply R.C.M. 917 or R.C.M. 913(c)(5) by allowing the Government to reopen its case, without first inquiring as to its reason for their failing to present evidence on the Controlled Substances Act because that is not required. Our superior court's predecessor, in *United States v. Ray*, similarly did not require an explanation despite its recognition of the historical context of R.C.M. 913(c)(5). 26 M.J. 468, 469 (C.M.A. 1988) (citations omitted) (offering a party moving to reopen its case "should proffer some reasonable excuse for its request").

In being afforded the opportunity to be heard, the trial counsel requested to reopen its case; trial defense counsel objected and advocated the trial judge not allow the Government to reopen its case.

As it was in his "discretionary power," the trial judge allowed the Government to reopen its case. *Satterley*, 55 M.J. at 171. The discussion to R.C.M. 917(c) guides trial judges to ordinarily permit trial counsel to reopen their case as to the specific insufficiency identified. Accordingly, this trial judge allowed the Government to reopen its case to introduce evidence supporting the charged element that MDMA was a Schedule I controlled substance pursuant to the schedules of the Controlled Substances Act.[5] Through the testimony of SA JF, the trial counsel admitted evidence that MDMA is listed on Schedule I. The Defense was permitted to and did cross-examine the witness, SA JF.

The trial judge's decision to raise *sua sponte* a motion for a finding of not guilty based upon a lack of evidence as to MDMA being a Schedule I controlled substance pursuant to the Controlled Substances Act was not arbitrary, fanciful, clearly unreasonable, or clearly erroneous. *St. Jean*, 83 M.J. at 112. Further, his decision to allow the Government to reopen its case and introduce evidence on the insufficiency was similarly not arbitrary, fanciful, clearly unreasonable, or clearly erroneous. *Id.* The trial judge did not abuse his discretion in either decision. *See id.* at 469 (holding that the trial judge who allowed the

---

[5] *See* 21 U.S.C. § 812(c), *Schedules of controlled substances* (2018).

Government to reopen its case to admit evidence of wrongfulness was not an abuse of discretion).

## C. Legal and Factual Sufficiency of Specification 2 of the Additional Charge (Wrongful Use of MDMA)

### 1. Additional Background

As described above, AB BM testified that between on or about 1 June 2020 and on or about 30 September 2020, within the state of Arizona, she witnessed Appellant use MDMA. She stated Appellant snorted it through his nostril on one occasion and ingested it in pill form on another occasion, chasing it with either water or alcohol. Appellant's wrongful use of MDMA spanned two different residences, each his own, in Arizona. She described MDMA as a colorful pill and said that they thought it was MDMA because that is what they were told when they were provided it. AB BM also explained that she and Appellant had the effects that they were expecting with the use of MDMA. She explained that their use was voluntary and planned for the weekends, to provide enough time for the drug to leave their bodies.

Additionally, SA JF testified that MDMA is included as a controlled substance in Schedule I of the Controlled Substances Act. Trial defense counsel did not object to SA JF's knowledge of the Controlled Substances Act.

### 2. Law

We review issues of legal and factual sufficiency de novo. *United States v. Washington*, 57 M.J. 394, 399 (C.A.A.F. 2002) (citation omitted). "Our assessment of legal and factual sufficiency is limited to the evidence produced at trial." *United States v. Rodela*, 82 M.J. 521, 525 (A.F. Ct. Crim. App. 2021) (citation omitted).

"The test for legal sufficiency is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Robinson*, 77 M.J. 294, 297–98 (C.A.A.F. 2018) (citation omitted). "[T]he term 'reasonable doubt' does not mean that the evidence must be free from any conflict . . . ." *United States v. King*, 78 M.J. 218, 221 (C.A.A.F. 2019) (citation omitted). "[I]n resolving questions of legal sufficiency, we are bound to draw every reasonable inference from the evidence of record in favor of the prosecution." *United States v. Barner*, 56 M.J. 131, 134 (C.A.A.F. 2001) (citations omitted). Thus, "[t]he standard for legal sufficiency involves a very low threshold to sustain a conviction." *King*, 78 M.J. at 221 (alteration in original) (citation omitted).

"The test for factual sufficiency is 'whether, after weighing the evidence in the record of trial and making allowances for not having personally observed

the witnesses, [we are] convinced of the [appellant]'s guilt beyond a reasonable doubt.'" *Rodela*, 82 M.J. at 525 (second alteration in original) (quoting *United States v. Turner*, 25 M.J. 324, 325 (C.M.A. 1987)). "In conducting this unique appellate role, we take 'a fresh, impartial look at the evidence,' applying 'neither a presumption of innocence nor a presumption of guilt' to 'make [our] own independent determination as to whether the evidence constitutes proof of each required element beyond a reasonable doubt.'" *United States v. Wheeler*, 76 M.J. 564, 568 (A.F. Ct. Crim. App. 2017) (alteration in original) (quoting *Washington*, 57 M.J. at 399), *aff'd*, 77 M.J. 289 (C.A.A.F. 2018).

In order to convict Appellant of wrongful use of MDMA, a Schedule I controlled substance, as alleged in Specification 2 of the Additional Charge, the Government was required to prove that within the state of Arizona, between on or about 1 June 2020 and on or about 30 September 2020, Appellant wrongfully used 3,4-methylenedioxymethamphetamine, a Schedule I controlled substance. The term "wrongful" means without legal justification or authorization. *See Manual for Courts-Martial, United States* (2019 ed.) (*MCM*), pt. IV, ¶ 50.c.(5). A "controlled substance" means any substance that is included in Schedules I through V established by the Controlled Substances Act of 1970 (21 U.S.C. § 812). *MCM*, pt. IV, ¶ 50.c.(1).

**3. Analysis**

On appeal, Appellant submits SA JF's testimony was not competent evidence demonstrating MDMA is a Schedule I controlled substance. The Government disagrees and offers that Appellant's conviction for Specification 2 of the Additional Charge is both legally and factually sufficient. We agree with the Government.

Through its immunized witness, the Government admitted eyewitness evidence of Appellant's ingestion of MDMA, in the charged timeframe, at the charged location. AB BM described with specificity how she witnessed Appellant ingest MDMA, by either snorting it through his nostril, or ingesting it whole in pill form. She described what MDMA looked like, and that its effects were as expected. She also explained that Appellant's use was voluntary in that he was in control of his own ingestions. Further, the Government admitted evidence, through SA JF, that MDMA is included in Schedule I of the Controlled Substances Act.

We find the Government presented sufficient evidence for any rational trier of fact to find Appellant guilty beyond a reasonable doubt of wrongful use of MDMA, a Schedule I controlled substance. Further, we find we are ourselves convinced beyond a reasonable doubt Appellant wrongfully used MDMA, a Schedule I controlled substance.

### III. CONCLUSION

The findings and sentence as entered are correct in law and fact, and no error materially prejudicial to Appellant's substantial rights occurred. Articles 59(a) and 66(d), UCMJ, 10 U.S.C. §§ 859(a), 866(d). Accordingly, the findings and sentence are **AFFIRMED**.

FOR THE COURT

CAROL K. JOYCE
Clerk of the Court